UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, <br><br> Defendant. | Civil Action No. 23-1952 (RC) |

## **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and pertains to a FOIA request submitted by Plaintiffs to Defendant, the Executive Office for Immigration Review (the "Office") dated October 28, 2022, consisting of two parts. As detailed in the accompanying Declaration of Jeniffer Perez Santiago ("Santiago Decl."), the Office conducted a search for responsive records and, in response to the first item of the request, located numerous responsive documents that were publicly available and identified them in its final response letter to the Plaintiff, and otherwise located two emails that it produced with limited redactions under Exemption 6 of FOIA. As to the second part of the request, the Office produced a document showing the aggregate data that had been requested. Because the Office conducted a reasonable search and has produced all responsive, non-exempt records subject to FOIA identified by that search, summary judgment should be granted in its favor.

### **FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural background is fully set forth in Defendant's Statement of Material Facts Not in Genuine Dispute, and the Santiago Declaration, which are incorporated herein by reference.

**LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). At summary judgment, the "agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency withholding records under a FOIA exemption "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

The withholding agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And this evidence is

entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

**ARGUMENT**

**I.      The Office Conducted a Reasonable and Adequate Search for Responsive Records**

    **A.      Legal Standard**

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351; *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) ("[T]he agency's search for records need not be exhaustive, but merely reasonable. The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured."). A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting

- 3 -

that an agency need not search every record system, but only those which it believes are likely to hold responsive records).

Accordingly, for a court evaluating an agency's search, the fundamental question is "whether the search for those documents was adequate," not "whether there might exist any other documents responsive to the request." *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Weisberg*, 705 F.2d at 1351 ("[T]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.") (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The Court's inquiry, therefore, should focus on the method of the search, not its results. *See, e.g., Bigwood*, 132 F. Supp. 3d at 135 (explaining that the adequacy of the search is judged by appropriateness of the methods used to carry out the search rather than by fruits of the search). Agencies do not need to use every possible search term or those proposed in the FOIA request, but have "flexibility" in determining which terms are appropriate based on the nature of the request. *Kowal v. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *4 (D.C. Cir. July 16, 2024); *see also Physicians for Hum. Rts. v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (observing that there is no "bright-line rule requiring agencies to use the search terms proposed in a FOIA request").

The agency bears the burden of demonstrating the adequacy of its search by providing a declaration describing the search. "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks omitted); *West v. Spellings*, 539 F. Supp. 2d 55, 60 (D.D.C. 2008). Once an agency has met its burden of demonstrating the adequacy of its search, the agency's position can be rebutted "only by showing

that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *See, e.g.*, *Lasko v. Dep't of Just.*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (explaining that the adequacy of the search is not undermined by mere speculation that additional documents might exist); *Oglesby*, 920 F.2d at 67 n.13.

### B. The Office's Search

As an initial matter, the agency understood item 1 of the FOIA request, as it related to subparts 1.a to 1.d, to seek records that constitute officially issued and centrally disseminated guidelines, procedures, protocols, or policies pertaining to the listed subitems. (Santiago Decl. ¶ 15) Those subparts requested Office "records of guidelines, procedures, protocols, or policies" relating to certain aspects of the operations of immigration courts as they relate to requests to advance the date of individual merit hearings or to continue them. (ECF No. 1-1) The request did not seek "all records related to" such guidelines, procedures, protocols, or policies such as, for instance, the application of such guidelines, procedures, protocols or policies in specific immigration cases. Nor did it request documents regarding any practices related to the subject matter of the request that might be unique to specific immigration courts or immigration judges. (*Id.*) The Office, moreover, had no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols, or policies related to subitems 1.a to 1.d of the request. (Santiago Decl. ¶ 15) Thus, the Office reasonably framed and focused its search based on the language of the request. *See, e.g.*, *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (an agency is "bound to read [the request] as drafted, not as either agency officials or [the requestor] might wish it was drafted"); *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("FOIA demands only a reasonable search tailored to the nature of a particular request.").

Any other interpretation not only would be inconsistent with the language of the FOIA request, which did not include "all records related to" language, but also would be overly broad and inconsistent with the obligation under FOIA that a requestor reasonably describe the records sought. *Kowal,* 2024 WL 3418844, at *3 ("Agencies do not need to honor unreasonably burdensome requests, boiling the ocean in search of responsive records."); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) ("Broad, sweeping requests lacking specificity are not sufficient.") The Office oversees seventy-two immigration courts across the country which handle hundreds of thousands of cases in any given year, and it would be unduly burdensome for the agency to review the docket in every immigration case over the five-year period at issue in the request to try to identify any case-specific application of the type of guidelines, procedures, protocols or policies requested in the FOIA request. Santiago Decl. ¶¶ 16-17. Moreover, "[b]inding precedent in this circuit establishes that an agency need not respond to requests that entail an unduly burdensome effort of review, redaction, and production," *Ctr. for Imm. Studies v. USCIS*, 628 F. Supp. 3d 266, 268 (D.D.C. 2022), which would be the case here were Plaintiffs to argue for an interpretation of the request beyond that understood by the agency.

The accompanying Santiago Declaration establishes that the Office conducted a reasonable search as to both items of the request. As to the first part of the request, the Office identified all guidelines, procedures, protocols, or policies regarding the operations of immigration courts sought in the request that were publicly available. Santiago Decl. ¶ 21. That search included consulting with the Chief Immigration Judge, Sheila McNulty, as well as an attorney advisor within the Office with knowledge of guidelines, procedures, protocols, or policies applicable to the seventy-two immigration courts. *Id*. Eleven distinct documents were identified as responsive to items 1.a to 1.d of the request and links to those materials were provided to the requester. *Id*.

¶¶ 21, 24. As to the fifth subitem (item 1.e), which sought records related to the agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings," it was determined that the notice of proposed rulemaking had not, as of the time of the search, resulted in a final rulemaking. Santiago Decl. ¶ 22. Accordingly, the Office did not locate any responsive records related to that subitem of the request. *Id.*

To the extent any non-public guidelines, procedures, protocols, or policies had issued to immigration courts regarding items 1.a to 1.d of the request, the Office determined that the office likely to have responsive records was the Office of the Chief Immigration Judge. Santiago Decl. ¶ 16. Any guidelines, procedures, protocols, or policies, as well as any instructions on how to implement guidelines, procedures, protocols, or policies across the immigration courts, are channeled through the Office's leadership. *Id.* Thus, to the extent any responsive records existed that were not already published and publicly available, they would be disseminated by the Office leadership through group emails to Assistant Chief Immigration Judges and Court Administrators. *Id.*

The Office identified Sheila McNulty as the individual likely to have responsive records for the five-year period of the request (2017 to 2022). Santiago Decl. ¶ 19. At the time of the original search, Sheila McNulty was the Regional Deputy Chief Immigration as of March 2021, and before that time she was an Assistant Chief Immigration dating back to November 2015. *Id*. She became the Chief Immigration Judge in April 2023. In all three positions, she would have either received, been copied, or sent all guidelines, procedures, protocols, or policies related to the operation of the immigration courts not otherwise published and publicly available. *Id*. Judge McNulty's original search consisted of a manual search of her email and located one email chain

consisting of two emails. *Id.* ¶ 20. The Office determined that it would be redundant for others within the Office of the Chief Immigration Judge to search their email because Judge McNulty would have been copied on any emails sent by them regarding guidelines, procedures, protocols, or policies related to the operation of the immigration courts. *Id.* ¶ 19.

After the filing of this lawsuit, and while she was in the position of Chief Immigration Judge, a supplemental key word search was conducted of Judge McNulty's email. That search encompassed emails sent from Judge McNulty to either the group email address for all Assistant Chief Immigration Judges or the group email address of all Court Administrators or both group email addresses collectively. *Id.* ¶¶ 25-27. The search was limited in that way because any email disseminating guidelines, procedures, protocols, or policies for immigration courts would have been sent to these group email addresses. *Id.* The period covered by the search was the January 1, 2017, to October 28, 2022. *Id.* The search terms, which were drawn from the language of the request, included the following:

    a.    Policy AND "advance" AND "merit hearings"

    b.    Guidance AND "advance" AND "merit hearings"

    c.    Protocol AND "advance" AND "merit hearings"

    d.    Procedure AND "advance" AND "merit hearings"

    e.    Policy AND "continue" AND "hearing"

    f.    Guidance AND "continue" AND "hearing"

    g.    Protocol AND "continue" AND "hearing"

    h.    Procedure AND "continue" AND "hearing"

*Id*. ¶ 26.  This search identified 121 potentially responsive documents and included the two emails identified in the original search.  None of the other documents identified in the supplemental search were determined to be responsive to the request.  *Id.* ¶ 27.

A further supplemental search was done of the email of the two Chief Immigration Judges that preceded Judge McNulty, specifically, MaryBeth Keller and Tracy Short.  *Id.* ¶ 28.  Tracy Short was Judge McNulty's immediate predecessor and held the Chief Immigration Judge position from June 2020 to July 2022, and was preceded in that role by MaryBeth Keller, who held the position from September 2016 to July 2019.  *Id.*  This search was otherwise similar to the prior supplemental search.  *Id.*  This second supplemental search returned approximately 202 potentially responsive items but, upon review, the only documents identified as actually responsive to the request were the same two emails that were previously identified from the original search conducted by Judge McNulty.  *Id.* ¶ 29.

As to the second part of the request, the Office determined that the Planning, Analysis, and Statistics Division would be the division within the Office that maintains data of the type described in that part of the request.  That division conducted a search of the automated CASE system to generate the requested data and provided to the FOIA Office an Excel spreadsheet reflecting the requested information to the extent available.  *Id.* ¶ 23. That aggregate data was produced to Plaintiffs on August 9, 2023.  Ex. B to Santiago Decl.

Accordingly, the Office conducted a reasonable and adequate search for records responsive to Plaintiffs' FOIA request and summary judgment should be granted to the Office as to the adequacy of its search.

## II.    The Office Properly Invoked FOIA Exemption 6

The Office only withheld a limited amount of information from the responsive documents and, specifically, did so only under FOIA Exemption 6, which protects "personnel and medical

files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).  The Supreme Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989).

To determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted) (citing *Dep't of Def. v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), and *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:

> [T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.

*Lepelletier*, 164 F.3d at 46 (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)); *see also Reps. Comm.*, 489 U.S. at 773.  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

As discussed in the Santiago Declaration, the two identified emails contain email addresses of Office employees and a group email for Assistant Chief Immigration Judges.  Santiago Decl.

¶ 30. Given the nature of the Office's work, the Office determined that the release of the redacted portions of the email addresses is reasonably likely to subject those individuals to increased harassment or threats based on their employment by or association with the Office, or to unwanted contact for further information. *Id.* In contrast, the Office has identified no discernible public interest in disclosure of these individuals' names or other identifying information that outweighs their privacy interest in such information. Thus, the Office has properly met its burden of withholding this information under Exemption 6.

**III.    The Office Has Complied with FOIA's Segregability Requirement**

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The combination of the *Vaughn* index and the affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."); *Loving v. Dep't of Def.,* 550 F.3d 32, 41 (D.C. Cir. 2008) ("Here the district court relied on the very factors that we have previously deemed

sufficient for this determination, i.e., the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material."); *see also Elec. Privacy Info. Ctr. v. Dep't of Just.*, 320 F. Supp. 3d 110, 120-21 (D.D.C. 2018) (same); *Anguimate v. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 22 (D.D.C. 2013) (same).

Here, all reasonably segregable, non-exempt information has been provided from the two emails that contain redactions under Exemption 6. Ex. B to Santiago Decl. As reflected by the exhibit of the released records that is attached to the Santiago Declaration, the redactions were minimal and limited to the personally identifying information within the email addresses. Santiago Decl. ¶ 30.

## CONCLUSION

For the above reasons, the Court should grant the Office summary judgment.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ Jeremy S. Simon
      JEREMY S. SIMON, D.C. Bar # 447956
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2528
      Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*