UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION COUNCIL, *et al.*,

Plaintiffs,

v.

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

Defendant.

Civil Action No. 23-cv-1952 (RC)

**DECLARATION OF JENIFFER PEREZ SANTIAGO, EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW**

## I.      INTRODUCTION

I, Jeniffer Pérez Santiago, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am Associate General Counsel for FOIA and Acting Senior FOIA Litigation Counsel under the Office of the General Counsel (OGC) at the Executive Office for Immigration Review (EOIR). I have held this position for approximately two years. I also serve as the Acting Supervisor for the FOIA Unit as needed. Prior to this position, I was a Senior FOIA Analyst for the Consumer Financial Protection Bureau (CFPB) in which I conducted quality control reviews for all FOIA requests. In addition, I trained the FOIA team, stakeholders and senior CFPB personnel on FOIA related matters. I held the position from March 2020 through October 2021. Prior to my position at CFPB, I was a Senior FOIA Analyst for the Department of Energy where I processed complex FOIA requests, appeals and litigation. I held that position from May 2019 through March 2020.

2.      The EOIR FOIA Unit is responsible for executing EOIR's FOIA Program pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. The EOIR FOIA Unit is comprised of a FOIA Service Center and a separate group of FOIA Attorney Advisors with support staff.

3.      In my role as Associate General Counsel (FOIA), my official duties and responsibilities include creating and implementing policy and procedures for the EOIR FOIA Program, conducting FOIA training for EOIR personnel, processing complex FOIA requests and providing litigation support to Assistant U.S. Attorneys defending the agency in FOIA litigation matters and appeals.  In connection with my official duties, I am familiar with EOIR's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.  In that respect, I am familiar with the FOIA request made by Plaintiffs dated October 28, 2022 that is attached as Exhibit A to the Complaint (the "FOIA Request" 2023-03932). The statements contained in this declaration are based upon my personal knowledge, my review of records kept by EOIR in the ordinary course of business, and information provided to me by other EOIR employees in the course of my official duties.

## II.    DESCRIPTION OF EOIR'S FOIA PROGRAM

4.      EOIR's FOIA Program operates as a bifurcated system based on whether a FOIA request is designated as "Simple" (or Track 2) or "Complex" (or Track 3), under a multi-tracking system.[1] FOIA intake is managed by a FOIA Service Center and is comprised of

---

[1] EOIR's FOIA Program also maintains an "Expedited" (or Track 1) multi-track designation in which a request can either be Complex or Simple; however, Expedited requests have generally made up less than 20 requests per year over the last 5 years. In practice, "expedited" merely means that the request moves to the front of the queue in either the Complex track (Track 3) or the Simple track (Track 2).

government information professionals and contractors. The FOIA Service Center processes all Simple requests. One supervisory attorney advisor, two associate general counsels, including me,[2] one attorney advisor,  one legal assistant, and one part-time specialized contractor within OGC manage and process substantially all Complex requests.[3] Simple requests are generally first- or third-party requests seeking a Respondent's Record of Proceeding ("ROP") generated by an immigration proceeding, including Immigration Judge decisions and orders and Board of Immigration Appeals ("BIA" or "Board") decisions related to a particular Respondent. Complex requests are generally requests seeking agency records other than ROPs and generally require collection of records from one or more program offices (including field offices), involve a search for numerous records necessitating a wide-ranging search, and/or involve processing of voluminous records. In accordance with standard FOIA processing practice, FOIA requests are processed in the order received absent a grant of "Expedited" (Track 1) processing, generally referred to as a "First-in, First-out" system.

5.      Historically, Simple requests (i.e., requests for ROPs) comprise over 95% of FOIA requests received at the EOIR FOIA Service Center.  In Fiscal Year (FY) 2018, EOIR received 52,432 FOIA requests and had a backlog of 2,403 requests.  In FY2019, EOIR received 55,499 FOIA requests and had a backlog of 9,155 requests.  In FY2020, EOIR received 48,885 FOIA requests and had a backlog of 10,923 requests.  In FY2021, EOIR received 60,996 FOIA requests and had a backlog of 29,735 requests.  In FY2022, EOIR received 56,544 FOIA requests and had a backlog of 47,070 requests. In FY2023, EOIR received 70,475 FOIA requests and had a backlog of 21,623 requests. See

---

[2] One of the Attorney Advisors has been on detail since February 2022.
[3] Infrequently, attorneys within OGC who are not part of the FOIA Unit will be tasked on Complex requests if resources allow.

https://www.justice.gov/oip/reports-1.

6.      EOIR's FOIA Program for processing FOIA requests begins with the FOIA

Service Center. A FOIA request may be submitted through an on-line portal, known as the

Public Access Link ("the PAL") or by other submission means. The FOIA request is received

or logged in by FOIA intake personnel into an electronic database, and a control number is

automatically assigned. FOIA intake personnel briefly review the FOIA request to make an

immediate determination on whether the request seeks a ROP, in which case it is designated

as Simple (Track 2), or other agency records, in which case it is designated as Complex

(Track 3).[4] The requester then receives an acknowledgment letter if submitted through an on-

line portal, or, alternatively FOIA intake personnel send an acknowledgment letter or a

combined acknowledgement/response letter to the requester. The acknowledgement letter

includes the control number and other information related to fees, multi-tracking, approximate

time to process, and resources to assist the requester. The processing of Simple requests

remains within the FOIA Service Center for the life of the request until closed. All Complex

requests are forwarded to the supervisory attorney advisor overseeing the FOIA Program for

managing, processing, and/or delegating, and such Complex requests remain within OGC for

the life of the request until closed.

7.      For Simple requests, or first- or third-party requests for ROPs, the first step is to

identify the physical location of the ROP by entering a unique Respondent number into the

agency's CASE database.[5]  Generally, a ROP is located in one of three locations: (1) within

_____

[4] Requests for expedited processing are sent to the Complex request attorneys for a legal
determination on whether the requester is entitled to expedited processing.
[5] Case Access System for EOIR ("CASE") is the electronic case manager for the EOIR
Immigration Courts, Board of Immigration Appeals ("BIA"), and staff to support case
management.

one or more of the 15 Federal Records Centers ("FRC") (long-term storage facilities) geographically located throughout the contiguous United States; (2) within the 70 Immigration Courts and/or Immigration Adjudication Centers geographically located throughout the United States and its territories; or (3) within Headquarters, if the Respondent filed an appeal of a lower court decision. If located, the FOIA Service Center will order or retrieve the physical file ROP, scan and process its contents, and provide responsive records, if any, to the requester.[6]

8.      First-party requests for ROPs require verification of identity that the requester, or his or her representative, has authorization to receive the ROP since the records contained therein include a substantial amount of personally identifiable information (PII) and are essentially analogous to Privacy Act records. On the agency's website, EOIR advises: "To ensure that privacy protected information is not improperly released, a request seeking records regarding yourself must verify your identity. The FOIA Service Center recommends providing a notarized original signature or submitting an originally signed Form DOJ-361, Certification of Identity." *See* https://www.justice.gov/eoir/foia-submit a request#How do I request records about myself?. If the requester submits proper verification of identity for the ROP requested, EOIR provides an unredacted copy of the entire contents of the official record of immigration proceedings.

9.      Third-party requests for ROPs are by definition requests for ROPs without verification of identity. In those situations, EOIR may take one of two approaches to respond to the requester depending on the public interest related to the subject of the ROP. In the first

---

[6] Since 2018, EOIR has been creating electronic versions of ROPs for Respondents newly entering immigration proceedings, or "eROPs"; however, less than 2% of FOIA requests have eROPs as of the date this declaration was signed.

approach, EOIR may issue a partial grant providing a redacted copy of an immigration judge decision or order within the ROP if the Respondent is the subject of a precedential BIA or Attorney General published decision. *See* https://www.justice.gov/eoir/ag-bia-decisions. In that situation, the public interest weighs in favor of partial disclosure notwithstanding the lack of a verification of identity in view of the publicly available published decision. In the second approach, EOIR may issue a so-called Glomar response, meaning the agency neither confirms nor denies existence of any record related to the Respondent identified by the requester. *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). In this situation, the privacy interest of the individual identified by the requester outweighs any public interest in acknowledgement that the agency maintains any record related to the identified Respondent assuming any such record exists.

10.     The FOIA Service Center provides status updates on all current FOIA requests through the PAL, phone, and email. The PAL provides updates automatically upon every action in the record as the request is being processed. Per EOIR's procedures, once a call is received, the person that takes the call will add a note regarding the call in FOIAXpress within the "Notes" section.  The email inbox also provides status request updates and accepts new FOIA requests.

11.     For Complex requests, the first step is to identify which program offices, based on experience and knowledge of EOIR's program offices, within EOIR are reasonably likely to possess records responsive to that request (assuming any exist) and to initiate searches within those program offices. Once the appropriate program office(s) is/are identified for a given request, FOIA points of contact ("FOIA POCs") within each of those program offices are provided with a copy of the FOIA request and/or a detailed description of the request. The

FOIA POC(s) then review(s) the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward(s) the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

12.     EOIR's organizational chart illustrates that the agency is organized as follows: the Office of the Director ("OOD") and seven components thereunder, specifically, the BIA, the Office of the Chief Administrative Hearing Officer ("OCAHO"), the Office of the Chief Immigration Judge ("OCIJ"), the Office of the General Counsel ("OGC"), the Office of Administration ("OA"), the Office of Information Technology ("OIT"), and the Office of Policy ("OP"). *See* https://www.justice.gov/eoir/eoir-organization-chart/chart. Several sub-components fall under OOD, including the Planning, Analysis, and Statistics Division ("PASD"), the Office of Legal Access Programs ("OLAP"), and the Office of Equal Employment Opportunity ("EEO"). *See* https://www.justice.gov/eoir /office-of-the-director. Additionally, several sub-components fall under OP, including, the Communications and Legislative Affairs Division ("CLAD"), the Immigration Law Division ("ILD"), and the Legal Education and Research Services Division ("LERS").

13.     In accordance with the EOIR FOIA Unit's instructions, the individuals and component offices are directed to conduct searches of their file systems, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the file systems likely to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the FOIA supervisory attorney advisor, me, other associate general counsel, or attorney advisor, who manage,

process, and/or delegate tasking of Complex (Track 3) requests.

### III.   PROCESSING OF THE FOIA REQUEST

14.     I have reviewed Plaintiffs' FOIA Request dated October 28, 2022, which is attached as Exhibit A to the Complaint (and Exhibit A to this declaration).  The request sought the following information:

*1. For the period between January 1, 2017, to the present, we request EOIR records of guidelines, procedures, protocols, or policies relating to the following:*

*a. Immigration courts' process and criteria used to advance the date of individual merit hearings. This includes, but is not limited to, immigration court clerks' advancement of individual merit hearing dates.*

*b. Immigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to the following:*

*i. Attorney has a case-related scheduling conflict; or*

*ii. Attorneys' workload or case-related conflicts that may prevent case preparation, such as having multiple hearings scheduled with EOIR within a short period of time or case appointments with other agencies, e.g. client interviews with U.S. Citizenship and Immigration Services (USCIS).*

*c. Immigration courts' process for notifying respondents, respondents' representatives, or both, that individual merit hearings have been advanced.*

*d. Court personnel's process for selecting a new hearing date when an individual merit hearing is advanced, including materials that describe how to input rescheduling information in attorneys' EOIR ECAS calendar.*

> *e. The agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings."*
>
> *2. Aggregate data since January 1, 2020, that includes the following:*
>
> *a. The number of cases in the EOIR system that have been marked with idnAdjCode 87, strCode 55, strDescription "HEARING DELIBERATELY ADVANCED BY COURT."*
>
> *b. The number of cases in the EOIR system that have been marked with idnAdjCode 107, strCode 9B, strDescription "DOCKET MANAGEMENT (ADVANCE HEARING)."*

15.     The agency understood item 1 of the FOIA request to seeks records that constitute officially issued and centrally disseminated guidelines, procedures, protocols, or policies pertaining to the listed subitems. The request did not seek "all records related to" such guidelines, procedures, protocols, or policies such as, for instance, the application of such guidelines, procedures, protocols or policies in specific immigration cases.  Nor did it request documents regarding any practices related to the subject matter of the request that might be unique to specific immigration courts or immigration judges.  EOIR, moreover, has no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols or policies related to the subitems specified in the request that would deviate from any centrally issued guidelines, procedures, protocols or policies, including those identified by EOIR in response to the FOIA request as referenced in paragraph 21 below.

16.     EOIR oversees seventy-two immigration courts across the country. There are several positions that form the Office of the Chief Immigration Judge (OCIJ)'s leadership.

The highest-level roles are the Chief Immigration Judge and the Regional Immigration Judges.  Each court is administered by an Assistant Chief Immigration Judge (ACIJ) and a Court Administrator (CA).  Any guidelines, procedures, protocols, or policies, as well as instructions on how to implement guidelines, procedures, protocols, or policies across the courts, must be channeled through EOIR's leadership and, to the extent any existed that were not published and publicly available (see paragraph 21 below), would be disseminated by EOIR leadership to all ACIJs and Court Administrators through ACIJ or Court Administrator group emails.

17.     Were Plaintiffs to contend that item 1 of the FOIA request seeks records beyond those that constitute officially issued and centrally disseminated guidelines, procedures, protocols or policies, the request fails to reasonably describe the records sought or would be unduly burdensome to process as there are seventy-two immigration courts receiving hundreds of thousands of cases in any given year, and it would be unduly burdensome for the agency to review the docket in each of those cases over the time period at issue in the request to try to identify any case-specific application of the type of guidelines, procedures, protocols or policies requested in the FOIA request.  Moreover, EOIR FOIA currently has approximately 4,712 open FOIA requests, some going back to 2020.  EOIR staff are working assiduously to reduce that backlog and conducting burdensome searches would interrupt the efforts of the agency to reduce the backlog.

18.     On October 28, 2022, acknowledgement correspondence was sent to Plaintiff by the FOIA Service Center advising that Plaintiff's request was assigned Control No. FOIA 2023-03932.   On December 9, 2022, the FOIA Office sent a request for records to OCIJ to search for records sought in the first part of the request. Because guidelines, procedures,

protocols or policies is disseminated by OCIJ leadership to the ACIJs and ACs, and the request was understood to be seeking centrally issued guidelines, procedures, protocols or policies documents, OCIJ was the office identified as being likely have the type of records that Plaintiffs sought in their request.

19.     With respect to item 1 of the request, a request was sent to then-Regional Deputy Chief Immigration Judge Sheila McNulty, Principal Deputy Chief Immigration Judge Daniel Weiss, Regional Deputy Chief Immigration Judge Daniel Daugherty, and Court Administrator Hunter Johnson to search for responsive records.  Because all of these individuals would be included on emails concerning guidelines, procedures, protocols or policies of the type requested in the FOIA request (to the extent any existed that were not published and publicly available), it was determined that it was not necessary for all of them to review their email for responsive records.  Instead, the Regional Deputy Chief Immigration Judge Sheila McNulty conducted a manual search of her email to assess whether any guidelines, procedures, protocols, or policies were disseminated over email during the timeframe of the request.  Judge Sheila McNulty was an Assistant Chief Immigration Judge from November 2015 to March 2021 and Regional Deputy Chief Immigration Judge from March 2021 to April 2023.  Then, she was appointed to the position of Chief Immigration Judge.  This made her the custodian that would likely have any records during this period for item 1 of the request. In all three positions, she would have either received, been copied, or sent all policy changes within OCIJ, including guidelines, procedures, protocols or policies related to the operation of the immigration courts not otherwise published and publicly available.

20.     Accordingly, only the emails of Ms. McNulty were searched because Ms. McNulty was, at the time of the search, the Chief Immigration Judge and she had been part of

leadership within OCIJ (either as Chief Immigration Judge or as a Regional Deputy Chief Immigration Judge), or was an ACIJ, during the date range of the request and thus either would be the sender or recipient of any emails that were sent to the ACIJ or Court Administrator group emails.    Judge McNulty located two emails responsive to this request through the manual search of her email.

21.    In addition, because EOIR publicizes guidelines, procedures, protocols, or policies concerning immigration courts, a search was done to identify any such publicly available documents.  That search included consulting with OCIJ leadership, including Ms. McNulty, as well as an attorney advisor within EOIR with knowledge of guidelines, procedures, protocols or policies applicable to the seventy-two immigration courts.   That search identified the following responsive records and links that are publicly available at EOIR's website and that satisfy subitems 1a-d of the request (i.e., constitute guidelines, procedures, protocols, and policies related to the subject matter in those subitems):

1. ECAS manual https://www.justice.gov/eoir/page/file/1300086/download

2. UDSM https://www.justice.gov/eoir/file/1157516/download in the Shared Practice Manual Appendices of the ICPM.

3. ICPM- Immigration Court Practice Manual https://www.justice.gov/eoir/book/file/1528921/download

4. Adjournment Code list for the clerical side  https://www.justice.gov/eoir/reference-materials/general/shared-appendices/o#:~:text=Appendix%20O%20-%20Adjournment%20Codes%20%20%20Code,not%20av%20...%20%2020%20more%20rows%20

5. Policy Memo 21-15 https://www.justice.gov/eoir/book/file/1356761/download

6. DM 22-05

7. Policy Memo 21-13, updates and replaces Operating Policies and Procedures Memorandum (OPPM) 17-01 https://immpolicytracking.org/policies/eoir-director-gives-additional-guidance-continuances/#/tab-policy-documents

8. Policy Memo 21-06 https://www.justice.gov/eoir/page/file/1343191/download

9. Policy Memo 20-07 https://www.justice.gov/eoir/page/file/1242501/download

10. Policy Memo 19-11 https://www.justice.gov/eoir/reference-materials/OOD1911/download

11. OPPM 17-01 https://www.justice.gov/eoir/file/oppm17-01/download

22.      As to the fifth subitem (item 1e), which sought records related to the agency's implementation of the 11/27/2020 Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings," 85 FR 75925, it was determined that the notice of proposed rulemaking had not, as of the time of the search in response to the FOIA request, resulted in a final rulemaking.  Accordingly, EOIR did not locate any responsive records related to that subitem of the request.

23.      As to item 2 of the request, on December 9, 2022, the FOIA Office sent a request for records to the Planning, Analysis, and Statistics Division (PASD) to search for records sought in that item of the request.  PASD would be the division within EOIR that maintains data of the type described in item 2 of the request.  On December 12, 2022, PASD provided to the FOIA Office an Excel spreadsheet with a table responsive to the second part of Plaintiff's request. The table shows the number of hearings labeled with adjournment codes 9B and 55 from January 1, 2020, to December 9, 2022. PASD conducted a search of the automated CASE system to generate this data. Adjournment code 9B corresponds to "Docket Management (Advance Hearing) and 55 corresponds to "Hearing Deliberately Advanced by

13

Court. Although adjournment code 55 was deactivated before the beginning of this timeframe, the table reflects the number of hearings that occurred during the timeframe specified, not when the adjournment codes were entered.

24. EOIR issued a final response letter to the Plaintiffs on August 9, 2023, and that letter along with its enclosures is attached hereto as Exhibit B. That letter included the data requested in item 2 of the request. As to item 1 of the request, that letter identified numerous publicly available documents pertaining to policies applicable to immigration courts that were accessible from the internet (as identified in paragraph 21 above). It also included an email chain encompassing two emails with limited redactions under Exemption 6 of FOIA.

25. Following the filing of this lawsuit, and without conceding any inadequacy in its original search, EOIR agreed to conduct a supplemental search for electronic records with the Office of Information Technology (OIT).

26. The search parameters used by the OIT for this search were the following. The search was conducted of the emails of Sheila McNulty (encompassing emails in which she was the sender) and was limited to emails sent to either the group email address for all Assistant Chief Immigration Judges or the group email address of all Court Administrators. Emails sent from Sheila McNulty to both group email addresses (and not simply one or the other) were also included in the search results. The search was limited in this way because any emails of EOIR guidelines, procedures, protocols or policies across the immigration courts would be disseminated by EOIR leadership to those group email addresses.

27. The search terms, which were drawn from the language of the request, were:

1. Policy AND "advance" AND "merit hearings"

2. Guidance AND "advance" AND "merit hearings"

3. Protocol AND "advance" AND "merit hearings"

4.      Procedure AND "advance" AND "merit hearings"

5.      Policy AND "continue" AND "hearing"

6.      Guidance AND "continue" AND "hearing"

7.      Protocol AND "continue" AND "hearing"

8.      Procedure AND "continue" AND "hearing"

The date range of the search was 1/1/2017 through 10/28/2022, the latter being the date when EOIR began processing this request.

27.     This search returned approximately 121 items. A responsiveness review was conducted of those search results and the same emails that were previously identified from the manual search described in paragraph 20 above were the only records identified as responsive to the request.

28.     On June 20, 2024, EOIR initiated another OIT search in order to ensure that any emails sent by Sheila McNulty's predecessors in the role as Chief Immigration Judge were captured by the search.  Thus, the search was conducted of the emails of MaryBeth Keller  and Tracy Short who served in the role of Chief Immigration Judge prior to Sheila McNulty.  Tracy Short was Judge McNulty's immediate predecessor and held the Chief Immigration Judge position from June 2020 to July 2022, and was preceded in that role by MaryBeth Keller, who held the position from September 2016 to July 2019.   Sheila McNulty's email also was searched again to ensure that the search of her email was consistent with this supplemental search.  This supplemental search  was limited to emails sent to, received by, or copied to either the group email address for all Assistant Chief Immigration Judges or the group email address  of all Court Administrators.  The search terms were identical to the first OIT search terms described in paragraph 27.

29.     The second search returned approximately 202 items. A responsiveness review was conducted of those search results and the same emails that were previously identified from the manual search described in paragraph 20 above were the only records identified as responsive to the request. The fact that no additional records were found after a second, more expansive OIT search was conducted further confirms the adequacy of the search.

30.     Pertaining to exemption 6 of the FOIA applied to the released records, the redactions consisted of employee email addresses and a group email address to all ACIJs. Exemption 6 protects individuals from unwarranted invasions of personal privacy, including where disclosure of such email addresses could result in harassment of employees by the public. The group email address withheld could similarly be used to harass every ACIJ in the country at once. Given the nature of the work conducted by EOIR, the agency determined that the employees have a privacy interest in their work email addresses and that there is no corresponding public interest in disclosure of that information. Accordingly, those email addresses were withheld under Exemption 6 of FOIA.  The agency also determined that foreseeable harm would result from disclosure of those email addresses in light of the potential for harassment.  The redactions to the released records were minimal and all reasonably segregable, non-exempt information was provided to the requester.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated the 19th day of July 2024.

JENIFFER PEREZ
SANTIAGO
Digitally signed by JENIFFER
PEREZ SANTIAGO
Date: 2024.07.19 11:32:35
-04'00'
_____
Jeniffer Pérez Santiago
Associate General Counsel (FOIA)
Acting Sr. FOIA Litigation Counsel

EXHIBIT A





October 28, 2022

Via Public Access Link

Office of the General Counsel
Attn: FOIA Service Center
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

      Re:     Freedom of Information Act Request

Dear FOIA Officer:

The American Immigration Council (the "Council") and the Capital Area Immigrants' Rights Coalition ("CAIR") (hereinafter referred to as "Requesters") submit the following Freedom of Information Act (FOIA) request for records regarding immigration courts, including immigration adjudication centers. In accordance with 5 U.S.C. § 552(a)(6)(A)(i), we expect a response to this request within 20 working days, unless otherwise permitted by statute.

## I.      REQUEST FOR INFORMATION

1. For the period between January 1, 2017, to the present, we request EOIR records[1] of guidelines, procedures, protocols, or policies relating to the following:

    a. Immigration courts' process and criteria used to advance the date of individual merit hearings. This includes, but is not limited to, immigration court clerks' advancement of individual merit hearing dates.

    b. Immigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to the following:
        i. Attorney has a case-related scheduling conflict; or

---

[1] The term "records" in this request includes, but is not limited to: communications, correspondence, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

      ii. Attorneys' workload or case-related conflicts that may prevent case preparation, such as having multiple hearings scheduled with EOIR within a short period of time or case appointments with other agencies, e.g. client interviews with U.S. Citizenship and Immigration Services (USCIS).

   c. Immigration courts' process for notifying respondents, respondents' representatives, or both, that individual merit hearings have been advanced.

   d. Court personnel's process for selecting a new hearing date when an individual merit hearing is advanced, including materials that describe how to input rescheduling information in attorneys' EOIR ECAS calendar.

   e. The agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings."

2. Aggregate data since January 1, 2020, that includes the following:
   a. The number of cases in the EOIR system that have been marked with idnAdjCode 87, strCode 55, strDescription "HEARING DELIBERATELY ADVANCED BY COURT."

   b. The number of cases in the EOIR system that have been marked with idnAdjCode 107, strCode 9B, strDescription "DOCKET MANAGEMENT (ADVANCE HEARING)."

## II.    FORMAT OF PRODUCTION

Requesters seek responsive electronic records in a machine-readable, native file format, with all metadata and load files. We request that any data be provided in a workable format, such as Microsoft Excel or comma-separated values (CSV) files. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request. We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits.

Requesters also ask that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III.    FEE WAIVER REQUEST

Requesters seek a fee waiver because the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the [requester]…." 5 U.S.C. § 552(a)(4)(A)(iii).

The public interest criteria are satisfied when (1) the request concerns operations or activities of the government; (2) disclosure is likely to contribute to an understanding of government operations or activities; (3) disclosure contributes to an understanding of the subject by the public at large; and (4) disclosure is likely to contribute significantly to such understanding.[2]

1) *Disclosure Will Contribute to Public Understanding of EOIR Operations*

a) *The request concerns the operations of the government, i.e. EOIR.*

EOIR administers the nation's immigration courts and its immigration judges are tasked with decision-making in individual removal proceedings.[3] Under federal regulations, "the Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings." 8 C.F.R. § 1003.18.

Over the past two years, attorneys have reported that immigration courts have advanced hearing dates in potentially thousands of cases without consideration of respondents' representatives' schedules or workload and provided short notice – or in some cases no notice – of the changes in schedule. In some cases, the court moved hearings to days when attorneys had two hearings scheduled at the same time and sometimes even in different states.[4] Immigration attorneys report that courts have scheduled multiple individual hearings for an attorney in one week, including scheduling up to twenty individual merit hearings in one month.

Given the amount of time it takes immigration attorneys to prepare with their clients for individual merit hearings, scheduling multiple hearings in one week may prejudice respondents by limiting the time attorneys have to properly prepare for hearings. Because respondents' testimony is critical to the outcome of their cases, practitioners are generally advised to have at least two preparation sessions prior to their individual hearings to go over expected direct and cross examinations.[5] It is recommended that the first preparation session occur four days prior to the hearing and the second session occur two days before the hearing.[6] Stacking multiple hearings in one week can severely curtail the time available for these sessions, which often can take hours depending on the type of relief for which the respondent applied.

---

[2] 6 C.F.R. § 5.11(k)(2) (2017) (DHS regulations outlining criteria for responses to requests for fee waivers under FOIA); *see also Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (citing 28 C.F.R. § 16.11(k)(2)).

[3] *See* Department of Justice, Executive Office for Immigration Review (EOIR), "Fact Sheet: Executive Office for Immigration Review: An Agency Guide," December 2017, https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/download.

[4] Posting of Jason Dzubow to The Asylumist, https://www.asylumist.com/2022/09/21/due-process-disaster-in-immigration-court/ (Sept. 21, 2022).

[5] Etnyre, Jr., "Preparing and Presenting an Asylum Case in Immigration Court," 12-08 *Immigration Briefings* (Aug. 2012).

[6] Etnyre at 20.

A crowded hearing schedule also is prejudicial to respondents because EOIR guidance suggests that motions to continue based on representatives' workload or scheduling conflicts fail to meet the regulatory standard. To alleviate a heavy workload in a given day or week, attorneys could file motions to continue one or more of the merit hearings. However, immigration courts retain discretion to grant such motions[7] for good cause shown. 8 C.F.R. § 1003.29. And a 2020 proposed rule sought to clarify that "good cause" may not be found on the basis of a representative's assertion that his or her workload or obligations in other cases prevent preparation.[8] While this proposed rule did not go into effect, it is unclear as to what extent this position with respect to "good cause" influences immigration judges' decisions regarding motions to continue.

Further, filing motions for continuances as a purported solution to the overload of cases is meaningless if attorneys of record are not provided with sufficient notice that EOIR has advanced a hearing. The lack of notice about advanced hearing dates often does not allow an attorney to follow EOIR's practice manual, which requires a motion for a continuance to be filed 15 days in advance of an individual hearing.

Thus, this FOIA request seeks specific information about EOIR's operations relating to how the agency decides to advance the date of certain individual merits hearings.

> b) *Disclosure will contribute to the public's understanding of EOIR policies on advancing hearings.*

Because EOIR has not provided the public with information regarding the agency's procedures for advancing individual merit hearings, this request seeks information about this practice. This information is critical to the public's understanding of immigration courts, particularly to individuals in removal proceedings and their representatives.

As previously mentioned, the courts have rescheduled individual merit hearings originally set for months, and sometimes years, in the future to impending dates often within mere weeks of such rescheduling appearing on attorneys' EOIR calendars. Attorneys assert that the EOIR calendar is the only way EOIR notifies respondents of this rescheduling. In order to adequately prepare for their individual merit hearings, individuals need information relating to this practice and whether or not the immigration courts consider attorneys' workloads in making these determinations. While the EOIR Practice Manual addresses how attorneys can request to advance a hearing date,[9] it fails to describe procedures to be applied when the courts move hearings to earlier dates.

As stated above, EOIR's practice of advancing hearings with short or no notice to immigrants and their lawyers can have deleterious effects to respondents' due process, as it can severely curtail attorneys' ability to prepare for hearings. Further, the stress of juggling multiple individual hearings

---

[7] EOIR, Immigration Court Practice Manual, at 101.
[8] 85 Fed. Reg. 75925, 36.
[9] EOIR, Immigration Court Practice Manual, at 102.

over a short period of time, sometimes in one day, and resolving the ensuing scheduling conflicts, can have a detrimental impact on practitioners' work performance. The 2019 AILA Market Place Study reports that 69% of immigration attorneys surveyed strongly or somewhat agree that job stress affects their performance and ranked dealing with difficult government agencies and time and effort managing workload as the two leading factors that affect job stress.[10]

Accordingly, guidance, policies, and other EOIR records will further the public's understanding about EOIR's practices on advancement of hearings and assist the immigration defense bar adopt best practices for handling the large volume of individual hearings that have been moved to new, and sometimes conflicting, times on their calendars. Disclosure of information requested will help attorneys and respondents understand why certain cases have been advanced so that respondents will quickly cooperate with the preparation of their cases. Information about notification practices will help attorneys and respondents to know the best practices on how to receive prompt notification that a case has been advanced.

c)   *Disclosure contributes to an understanding of the subject by the public at large.*

While some information on EOIR procedures is publicly available through its website, practice manual, and policies and procedures memoranda, clear explanations about how immigration courts advance certain cases is not provided. For example, a 2017 memorandum from then Chief Immigration Judge MaryBeth Keller suggested that continuances of individual merit hearings based on scheduling conflicts should generally not be granted because the hearings generally only are scheduled after considering the availability of respondents' representatives.[11] As previously noted, however, EOIR has advanced individual hearings without consideration of respondents' representatives' schedule. Further, a January 8, 2021, memorandum from EOIR Director James R. McHenry III calls for the careful review of requests to continue individual merit hearings and states that the proposed regulation – which disfavors motions to continue because of attorneys' workload – can provide helpful information regarding requests for continuances.[12]

The Council's track record on disseminating information to a wide audience can help the public understand EOIR's scheduling practices and how they impact people in removal proceedings and their attorneys. The Council plans to provide the information obtained to the public. In calendar

---

[10] American Immigration Lawyers Association, THE 2019 AILA MARKET PLACE STUDY 45 – 46 (NOV. 2019), https://www.aila.org/File/Related/19110890.pdf.

[11] Memorandum from MaryBeth Keller, Chief Immigration Judge, EOIR to All Immigration Judges, Court Administrators, Attorney Advisors and Judicial Law Clerks, and Immigration Court Staff on Operating Policies and Procedures Memorandum 17-01: *Continuances* 4 – 5 (July 31, 2017), https://www.justice.gov/eoir/file/oppm17-01/download.

[12] Memorandum from James R. McHenry III, Director, EOIR to All of EOIR on Continuances 5 – 6 (Jan. 8, 2021), https://www.justice.gov/eoir/page/file/1351816/download.

year 2021, the Council's website received more than 2.6 million page views from about 1.5 million visitors. The Council also regularly shares information with national print and news media.

Further, the Council regularly provides information to the public based on its FOIA requests.[13] In keeping with its track record of synthesizing or otherwise publishing information on governmental operations shared in responses to FOIA requests, the Council intends to post documents received in response to this FOIA request on its publicly accessible website. It also plans to share documents and other information with other interested stakeholders, including through networks with the immigration defense bar.

Similarly, CAIR Coalition also has the capacity to effectively convey the information to a broad audience as CAIR Coalition's website, which is available to the public, receives more than 3,000 monthly visitors, and information available on the website is shared and re-posted on other websites with large audiences. CAIR Coalition will circulate a summary of information disclosed through this request in its listserv, in which approximately 2,500 attorneys participate, as well as other listservs for immigration practitioners. Further information on CAIR Coalition's organization and the services CAIR Coalition provides is available on our website at www.caircoalition.org. CAIR Coalition has no commercial interest in the information to be obtained under this FOIA request and may make the information publicly available at no cost through our website.

Requesters' demonstrated commitment to disseminate this type of information through publicly accessible means and free of charge will contribute to the public's understanding of EOIR's practices.

d) *Disclosure will significantly contribute to the public's understanding of EOIR's practices.*

As previously noted, EOIR has thus far failed to explain the procedures and protocols used by immigration courts to advance hearings and provide clear guidance to attorneys about the availability to reschedule hearings when attorneys are overloaded with hearings during a particular week.

Thus, the request for information will contribute to the public's understanding of EOIR's practices.

2) *Disclosure of the information is not in the commercial interest of the Requesters.*

The Council is a not-for-profit organization and has no commercial interest in the present request. *See e.g.* 6 C.F.R. § 5.11(k)(3)(i)-(ii). This request furthers the Council's work to increase public

---

[13] *See, e.g.*, Guillermo Cantor and Walter Ewing, American Immigration Council, Still No Action Taken: Complaints Against Border Patrol Agents Continue to Go Unanswered (August 2017) (examining records of alleged misconduct by Border Patrol employees), http://bit.ly/Council_StillNoActionTaken; American Immigration Council, Enforcement Overdrive: A Comprehensive Assessment of ICE's Criminal Alien Program (November 2015) (analyzing data obtained from ICE on the CAP program), http://bit.ly/Council_ICE_CAP.

understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants. As with all other reports and information available on the Council's website, the information the Council receives in response to this FOIA request will be available to immigration attorneys, noncitizens, and other interested members of the public free of charge. Accordingly, the request is not primarily in the commercial interest of the Council.

CAIR Coalition is a 501(c)(3) nonprofit organization that provides legal services to detained noncitizens, including services administered through EOIR's Office of Legal Access Programs. Originally started as a project of the Washington Lawyer's Committee for Civil Rights and Urban Affairs, CAIR Coalition became an independent non-profit organization in 1999. CAIR Coalition consists of the Detained Adults Program, the Detained Children's Program, and the Immigration Impact Lab. CAIR Coalition's mission is to ensure equal justice for all immigrant adults and children at risk of detention and deportation in the Capital region and beyond through direct legal representation, know-your-rights presentations, impact litigation, advocacy, and the enlistment and training of attorneys to defend immigrants. We are driven in our pursuit of a vision for equal justice for all immigrants at risk of detention and deportation by our understanding of the grave human costs of the American detention and deportation system. We provide information for free, including the Virginia Immigration Consequences of Criminal Convictions Chart and free webinars and trainings. Due to the CAIR Coalition's mission, and because the information received as a result of this request will be publicly disseminated, the request is also not primarily in the commercial interest of the CAIR Coalition.

Thank you for your attention to this request. If you have any questions regarding this request, please do not hesitate to contact me.

Very truly yours,

/s/ Raul A. Pinto

Raul A. Pinto,
Senior Staff Attorney
Tel. 202-507-7549
Email rpinto@immcouncil.org

on behalf of Requesters

7



EXHIBIT B

**U.S. Department of Justice**
Executive Office for Immigration Review
*Office of the General Counsel*

*5107 Leesburg Pike, Suite 2150*
*Falls Church, Virginia 22041*

08/09/2023

Mr. Raul Pinto
Senior Staff Attorney
American Immigration Council
1331 G Street NW
Suite 200
Washington, DC  20005

     Re:    2023-03932

Dear Mr. Pinto,

This letter is in response to your Freedom of Information Act (FOIA) request dated 10/28/2022 to the Executive Office for Immigration Review (EOIR) in which you seek guidelines, procedures, protocols, or policies relating to the following:

a. Immigration courts' process and criteria used to advance the date of individual merit hearings. This includes, but is not limited to, immigration court clerks' advancement of individual merit hearing dates.

b. Immigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to the following:
i. Attorney has a case-related scheduling conflict; or
ii. Attorneys' workload or case-related conflicts that may prevent case preparation, such as having multiple hearings scheduled with EOIR within a short period of time or case appointments with other agencies, e.g. client interviews with U.S. Citizenship and Immigration Services (USCIS).

c. Immigration courts' process for notifying respondents, respondents' representatives, or both, that individual merit hearings have been advanced.

d. Court personnel's process for selecting a new hearing date when an individual merit hearing is advanced, including materials that describe how to input rescheduling information in attorneys' EOIR ECAS calendar.

e. The agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings."

2. Aggregate data since January 1, 2020, that includes the following:
a. The number of cases in the EOIR system that have been marked with idnAdjCode 87, strCode 55, strDescription "HEARING DELIBERATELY ADVANCED BY COURT."

Letter to Raul Pinto                                                                                          Page 2
Subject: 2023-03932

    b. The number of cases in the EOIR system that have been marked with idnAdjCode 107,
    strCode 9B, strDescription "DOCKET MANAGEMENT (ADVANCE HEARING)."
    (Date Range for Record Search: From 1/1/2017 To 10/28/2022).

*Notice regarding correspondence submitted by postal mail:*

There are practical limitations on the ability of the FOIA staff to collect and to respond to "hard
copy" mailed queries. Therefore, to ensure a more timely response, FOIA requests to EOIR should
be submitted via our secure Public Access Link (PAL) here: https://foia.eoir.justice.gov/app/
Home.aspx. **Responses to FOIA requests and other correspondence received by postal mail
may experience a significant delay.**

A search was conducted and one or more records responsive to your request were located. We are
granting partial access to the responsive record(s).

Portions of the enclosed records have been redacted in accordance with FOIA Exemption 6, 5
U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly
unwarranted invasion of the personal privacy of third parties.

Please be advised that we have considered the foreseeable harm standard when reviewing records
and applying FOIA exemptions.

You may find the following publicly available information helpful:

1. ECAS manual https://www.justice.gov/eoir/page/file/1300086/download
2. UDSM   https://www.justice.gov/eoir/file/1157516/download in the Shared Practice
   Manual Appendices of the ICPM.
3. ICPM- Immigration Court Practice Manual
   https://www.justice.gov/eoir/book/file/1528921/download
4. Adjournment Code list for the clerical side of the https://www.justice.gov/eoir/reference-
   materials/general/shared-appendices/o#:~:text=Appendix%20O%20-
   %20Adjournment%20Codes%20%20%20Code,not%20av%20...%20%2020%20more%20r
   ows%20
5. Policy Memo 21-15   https://www.justice.gov/eoir/book/file/1356761/download

6. DM 22-05

7. Policy Memo 21-13, updates and replaces Operating Policies and Procedures Memorandum
   (OPPM) 17-01   https://immpolicytracking.org/policies/eoir-director-gives-additional-
   guidance-continuances/#/tab-policy-documents

8. Policy Memo 21-06 https://www.justice.gov/eoir/page/file/1343191/download

9. Policy Memo 20-07 https://www.justice.gov/eoir/page/file/1242501/download

10. Policy Memo 19-11https://www.justice.gov/eoir/reference-materials/OOD1911/download

11. OPPM 17-01 https://www.justice.gov/eoir/file/oppm17-01/download

Letter to Raul Pinto                                                                                          Page 3
Subject: 2023-03932

We have classified you as an "other" requester.  Requesters under the "other" classification are entitled to two free hours of search time.  In this instance, we have waived all fees related to the processing of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2006 & Supp. IV 2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.  *See* http://www.justice.gov/oip/foiapost/2012foiapost9.html.

You may contact the EOIR FOIA Public Liaison by e-mail at EOIR.FOIARequests@usdoj.gov for any further assistance and to discuss any aspect of your request.  Please reference the FOIA control number.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with the Executive Office for Immigration Review's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of this response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

JENIFFER PEREZ
SANTIAGO
Digitally signed by JENIFFER
PEREZ SANTIAGO
Date: 2023.08.09 11:27:45 -04'00'

Jeniffer Perez Santiago
Associate General Counsel

**Executive Office for Immigration Review (EOIR)**
**Planning, Analysis, and Statistics Division (PASD)**

Tasker # 23-162: 2023-03932 Search Request

*This document is pre-decisional, privileged, confidential, and intended solely for the use and information of DOJ Executive Office for Immigration Review.*

Data is current as of December 12, 2022.

Hearings[1] with an adjournment date from January 1, 2020 through December 9, 2022 that have an adjournment reason of 55 or 9B by adjournment code:

| Adjournment Reason | Adjournment Description | Count |
|---|---|---|
| 55 | HEARING DELIBERATELY ADVANCED BY COURT | 2,682 |
| 9B | DOCKET MANAGEMENT (ADVANCE HEARING) | 70,490 |

[1] Some cases may have had both adjournment codes.

**Sent:** Monday, April 24, 2023 9:45 AM
**To:** McNulty, Sheila (EOIR) <​(b)(6)​>
**Subject:** Language access and continuances

Good morning, ACIJs,

As you start your week, I wanted to remind you of our duties regarding language access and continuances in immigration courts.  I sent an e-mail last May with informal guidance and key points to remember when you and your judges are confronted with language access issues, particularly those in detained setting.  Since then, we have had new immigration judges join our agency and some transfer internally to other courts.  With that in mind, please forward this guidance to your judges as soon as possible and reiterate in person the importance of consistency when it comes to language access.

Thank you and I hope you are all having a good Monday.

Best,


**Sheila McNulty**
**Chief Immigration Judge**
**Executive Office for Immigration Review • Department of Justice**



This communication, along with any attachments, is covered by Federal and State law governing electronic communications, and may contain sensitive or legally privileged information.  If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited.  If you have received this in error, please notify the sender immediately and delete or destroy this message.

From: McNulty, Sheila (EOIR) <  (b)(6)
Sent: Wednesday, May 18, 2022 2:54 PM
To: All of ACIJs (EOIR) < (b)(6)
Cc: Daugherty, Daniel J (EOIR) < (b)(6) >; Weiss, Daniel H (EOIR)
< (b)(6)
Subject: Language Access and FOC Reminder

Dear Colleagues,

As the RDCIJ responsible for promoting pro bono legal services for pro se individuals pursuant to DM 22-01, I am reaching out to remind all judges, through you as their respective ACIJs, of our duties concerning language access in immigration court.  As you know, non-citizens with limited English proficiency routinely appear before our detained and non-detained courts, and due process requires that we provide all individuals a full and fair hearing, even if the language they speak and understand best is rare, or they require an interpreter to assist them with an application for relief. This is true not just at the outset of proceedings, but throughout the entire hearing process. Signs of language barriers and limited English proficiency may crop up at a second hearing, or in the middle of a merits hearing, and those signs should be heeded. In addition, it is important to be mindful of the fact that many of our detention facilities do not have language services readily available, and in some cases, they may not have any services that the pro se respondent may rely upon.

Although ensuring full and complete interpretation may require additional time and effort, it is imperative that we take all necessary steps when language access issues arise, so that we as judges ensure that testimony is complete and accurate and that proceedings are fair. The stakes in our immigration court proceedings are so high for so many that due process requires nothing less.  Below are a few key points to remember when confronted with language access issues in court, especially in detained settings:

1.      Be mindful of the facility in which the respondent is detained – there may not be a law library on site, or the hours may be very limited.  It may be helpful to ask the facility officers or DHS counsel about the facility's resources and use the answer to help you determine whether a non-citizen needs additional time to complete an application.

2.      Internet translation services such as Google Translate are not appropriate tools for translating official documents or applications for relief that will be submitted under oath. Although tempting as a method to assist or expedite language access, you should not advise respondents to use these tools to complete applications.

3.      Always identify a respondent's best language by asking "What is the language you speak and understand best?" At each subsequent hearing, verify that the respondent still wishes to proceed in that language. Avoid asking yes-no or binary questions like "Do you speak Spanish?" or "Do you speak Spanish or English?"

4.      Do not encourage a pro se respondent to try to proceed in a language that is not the one they speak and understand best. Doing so can cause problems for future hearings which may be scheduled in the wrong dialect or lead to confusion or incoherent testimony.

5.      A judge should never use a removal order as a "default" because a pro se respondent could not understand or complete an application.  All efforts should be made to ensure that respondent had a full and fair opportunity to complete their applications and to have their day in court.

6.      Also, remember that a continuance may be liberally granted when an interpreter is not available, and when the respondent has shown good cause as to why an application may not

have been completed timely or pursuant to the court- imposed deadline. *See* 8 C.F.R. Sec 1003.29 (2008); *see also* 8 C.F.R. Sec 1240.6 (2008); *See Matter of Hashmi*, 24 I & N Dec 785, 788 (BIA 2009), where the BIA noted several factors which provide good cause to continue proceedings, either at the judge's own instance or, for good cause shown, upon application by the respondent or DHS.

Finally, as DM 22-06, Friend of the Court has recently been published, it is important that we ensure that our judges have reviewed the updated guidance provided for utilizing the Friend of the Court model with pro se respondents in removal proceedings. As Director Neal stated, the benefits that can be provided through this model apply to the immigration courts as well as the public we serve, and the agency welcomes and encourages this participation. Please continue to work with your pro bono committees to ensure that this model as set forth in the Director's Memorandum is encouraged and utilized when appropriate, especially in circumstances when no legal representation is present.

Thank you for your consideration,
Sheila

Sheila McNulty
Regional Deputy Chief Immigration Judge
Central Region