**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL & CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, | |
|      Plaintiffs, | |
|      v. | Civil Action No. 1:23-cv-1952-RC |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | |
|      Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ...................................................................................................................... 7

    I.    Defendant Misconstrued Item 1 of Plaintiffs' Request ........................................ 8

    II.   Defendant Did Not Search All Repositories Likely to Contain Responsive Records ...... 12

        A.    Defendant's Justification for Not Searching for Item 1.e Records Is Inadequate......... 12

        B.    Defendant's Initial and Supplemental Searches Excluded Locations Likely to Contain Records Responsive to Items 1.a.-d ..................................................... 13

    III.  Defendant's Search Methods Were Not Reasonably Calculated to Uncover All Responsive Documents ....................................................................................... 14

        A.    Defendant's Description of Its Initial Search Lacks Sufficient Detail......................... 15

        B.    Defendant's Supplemental Search Was Unreasonable, Both as to Method and Keywords. ............................................................................................................ 15

            1.    Unilateral Keyword Searches Are an Unreasonable Search Method....................... 16

            2.    Defendant's Keywords Are Unreasonable ........................................................... 17

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Aguiar v. Drug Enf't Admin.*, 865 F.3d 730 (D.C. Cir. 2017) ........................................ 15

*Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909 (D.C. Cir. 2024) ....... 17-18

*Am. Oversight v. U.S. Gen. Servs. Admin.*, 486 F. Supp. 3d 306 (D.D.C. 2020) .... 6, 8-10, 17, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Avila v. U.S. Dep't of State*, No. 17-2685, 2022 WL 2104483 (D.D.C. June 10, 2022) ........ 17, 19

*Bader Fam. Found. v. U.S. Dep't of Educ.*, 630 F. Supp. 3d 36 (D.D.C. 2022) ................ 7, 17-19

*Charles v. Off. of the Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205 (D.D.C. 2010) ............... 7

*Debrew v. Atwood*, 792 F.3d 118 (D.C. Cir. 2015) ........................................................ 15

*Democracy Forward Found. v. U.S. Dep't of Just.*, Civil Action No. 17-1877, 2022 WL
17177497 (D.D.C. Nov. 23, 2022) ........................................................................ 12

*Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7 (D.D.C. 2018)
.................................................................................................................... 18-19

*Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90
(D.D.C. 2019) ................................................................................................ 6-7

*Immigr. Def. Project v. U.S. Immigr. & Customs Enf't*, 208 F. Supp. 3d 520 (S.D.N.Y. 2016)
.................................................................................................................... 17-18

*Jud. Watch, Inc. v. U.S. Dep't of State*, 272 F. Supp. 3d 88 (D.D.C. 2017) ...................... 7, 13-14

*LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345 (D.C. Cir. 2003) .............................. 8

*Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984) .......................................................... 8

*Morely v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ...................................................... 12, 15

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87
(S.D.N.Y. 2012) ........................................................................................ 7, 16-17

*Nat'l Press Club Journalism Instit. v. U.S. Immigr. & Customs Enf't*, Civil Action No. 18-2932,
2023 WL 9001337 (D.D.C. Dec. 28, 2023) .............................................................. 11

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ............................ 8-9

*New Orleans Workers' Center for Racial Justice v. U.S. Immigr. & Customs Enf't*, .................. 9

*Nicholls v. U.S. Off. of Pers. Mgmt.* ........................................................................ 9

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) .................................. 6, 12-14

*Pinson v. U.S. Dep't of Just.*, 79 F. Supp. 3d 250 (D.D.C. 2015) .................................. 6

*Pinson v. U.S. Dep't of Just.*, 80 F. Supp. 3d 211, (D.D.C. 2015) ................................ 10

*Pinson v. U.S. Dep't of Just.*, 245 F. Supp. 3d 225 (D.D.C. 2017) ................................ 11

*Pinson v. U.S. Dep't of Just.*, Civil Action No. 12-1872, 2017 WL 6887041,  (D.D.C. Aug. 31,
2017) ............................................................................................................ 12

*Prop. of the People, Inc. v. U.S. Dep't of Just.*, 530 F. Supp. 3d 57 (D.D.C. 2021) ................ 10

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 877 F.3d 399 (D.C. Cir.
2017)        ............................................................................................ 6, 7, 13-15

*Scott v. Harris*, 550 U.S. 372 (2007) ...................................................................... 6

*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82 (D.D.C. 2023) ........ 16

*Stonehill v. U.S. Dep't of Just. Tax Div.*, No. 1:19-cv-03770, 2022 WL 407145 (D.D.C. Feb. 10,
2022) ............................................................................................................ 13

*Truitt v. U.S. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ............................................11

*United States v. Hampton*, 718 F.3d 978 (D.C. Cir. 2013)...............................................11

*Urban Air Initiative, Inc v. Env't Prot. Agency*, 271 F. Supp. 3d 241 (D.D.C. 2017)................... 8

*Yeager v. Drug Enf't Admin.*, 678 F.2d 315 (D.C. Cir. 1982)...........................................11

**Statutes**

8 U.S.C. § 1229a ............................................................................................... 1

**Regulations**

8 C.F.R. § 1003.9 .......................................................................................... 1-2

Efficient Case & Docket Management in Immigration Proceedings, 89 Fed. Reg. 46,742 (May 29, 2024)............................................................................................................ 2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 6

**Other Authorities**

Exec. Off. for Immigr. Rev., PM 19-11, No Dark Courtrooms (2019),
    https://www.justice.gov/eoir/reference-materials/OOD1911/dl................................ 2

*Immigration Court Backlog Tops 3 Million; Each Judge Assigned 4,500 Cases*, TRAC
    Immigration (Dec. 18, 2023), https://trac.syr.edu/reports/734/ ................................ 2

*Immigration Court Backlog*, TRAC Immigration (July 2024),
    https://trac.syr.edu/phptools/immigration/backlog/................................................ 2

Nicholas R. Bednar, *The Public Administration of Justice*, 44 Cardozo L.R. 2139 (2023) .......... 2

## INTRODUCTION

This Freedom of Information Act (FOIA) case arises from Plaintiffs' FOIA request for immigration courts' policies for advancing, calendaring, and noticing certain hearings and adjudicating motions for continuances. Immigration judges nationwide have been advancing these hearings without adequate notice to noncitizens' counsel or considering their schedules and workloads. To educate the public about this threat to due process, Plaintiffs filed their request almost two years ago for records of this practice but have yet to receive such records. Instead, Defendant misconstrued their request and conducted an unreasonable search, which overlooked email accounts and other file systems likely to contain responsive records and failed to follow modern methods for electronic searches. Due to these deficiencies, Plaintiffs respectfully request the Court to grant their motion for summary judgment, deny Defendant's motion as to the search, and order Defendant to conduct a reasonable search for responsive records promptly.

## BACKGROUND

Defendant, the Executive Office for Immigration Review (EOIR), employs immigration judges to conduct removal and other immigration proceedings in seventy-two immigration courts across the country. 8 U.S.C. § 1229a(a)(1); Decl. of Jeniffer Perez Santiago ¶ 16, ECF No. 25-3 (Santiago Decl.). These judges lack autonomy over docket management comparable to their Article III counterparts. The Office of the Chief Immigration Judge (OCIJ) "supervis[es], direct[s], and schedule[s] . . . immigration judges in the conduct of . . . hearings and duties assigned to them," 8 C.F.R. § 1003.9(b), including by "develop[ing] operating policies," Decl. of Raul A. Pinto Ex. B, at 14 § 1.3(a) (Pinto Decl.),[1] for case prioritization, case resolution

---

[1] All page pin citations for exhibits appended to a declaration refer to the page number in the combined declaration and exhibit document rather than the page within the exhibit itself.

timeframes, and other docket management issues "to ensure the efficient disposition of all pending cases." 8 C.F.R. § 1003.9(b)(3). OCIJ's Chief Immigration Judge "oversees the administration of the immigration courts nationwide," Pinto Decl. Ex. B, at 14 § 1.3(a)(1), while its thirty-eight Assistant Chief Immigration Judges (ACIJs) supervise "specific immigration courts," *id.* Ex. B, at 14 § 1.3(a)(4), including by issuing court-specific policies, Pls. Resps. to Def.'s Statement of Facts Not in Dispute & Statement of Undisputed Material Facts ¶¶ H-J (Pls.' SUMF).

Immigration judges' dockets have ballooned in recent years such that over 3.7 million cases now pend before 680 or so judges. *Immigration Court Backlog*, TRAC Immigration (July 2024), https://trac.syr.edu/phptools/immigration/backlog/; *Immigration Court Backlog Tops 3 Million; Each Judge Assigned 4,500 Cases*, TRAC Immigration (Dec. 18, 2023), https://trac.syr.edu/reports/734/. Rising pressure to reduce backlogs has prompted Defendant to tinker repeatedly with regulations and operating policies for proceedings to optimize efficiency. *See, e.g.*, Efficient Case & Docket Management in Immigration Proceedings, 89 Fed. Reg. 46,742 (May 29, 2024); Exec. Off. for Immigr. Rev., PM 19-11, No Dark Courtrooms (2019), https://www.justice.gov/eoir/reference-materials/OOD1911/dl. Defendant also "pressures" immigration judges "to expedite the completion of their workloads." Nicholas R. Bednar, *The Public Administration of Justice*, 44 Cardozo L.R. 2139, 2173-75 (2023).

Advancing individual merits hearings[2] is a frequent way for immigration judges to complete cases faster and trim their dockets. *See* Santiago Decl. Ex. B, at 27, ECF No. 25-3

---

[2] Immigration proceedings have two types of hearings: master calendar hearings and merits hearings (or individual calendar hearings). The former deals with administrative issues like scheduling, representation, and filing deadlines, akin to an arraignment or a scheduling conference. Pinto Decl. Ex. D, at 183, 29:14-18. The latter, by contrast, are evidentiary hearings on contested matters such as challenges to removability or eligibility for relief. Exec. Off. for

(documenting 73,000 advancements in 2020-2022); Decl. of Clarissa Grimes ¶¶ 5-6 (Grimes Decl.) (discussing an advancement in 2024). Judges set merits hearings years into the future but later move them up to an earlier setting. *See* Decl. of Jason Dzubow ¶¶ 5, 8 (Dzubow Decl.); Grimes Decl. ¶ 5. These advancements are often *sua sponte*, last minute, and without written notice or consideration of the calendars of noncitizens or their counsel. *See e.g.*, Dzubow Decl. ¶¶ 5-9. Advancements also over- and double-book counsel, White Decl. Ex. A, at 6 (twelve hearings in a week and over twenty in a month), leave counsel with little time to prepare, and disrupt their personal and professional lives, Dzubow Decl. ¶ 10; Grimes Decl. ¶¶ 8-9.

In October 2022, "a consortium of over 200 immigration practitioners from across the nation" wrote Defendant about advancements and their effects on due process and their practices. White Decl. Ex. A, at 4. Defendant did not respond. *Id.* ¶ 6. Later that month, Plaintiffs filed the two-item FOIA request underlying this litigation. Item 1 seeks "records of guidelines, procedures, protocols, or policies relating to the following":

(a) Immigration courts' process and criteria used to advance the date of individual merit hearings. This includes, but is not limited to, immigration court clerks' advancement of individual merit hearing dates;

(b) Immigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to the following:

    i. Attorney has a case-related scheduling conflict; or

    ii. Attorneys' workload or case-related conflicts that may prevent case preparation, such as having multiple hearings scheduled with EOIR within a

---

Immigr. Rev., Immigration Court Practice Manual §§ 4.15, 4.16, https://www.justice.gov/eoir/reference-materials/ic.

short period of time or case appointments with other agencies, e.g., client

interviews with U.S. Citizenship & Immigration Services (USCIS);

(c) Immigration courts' process for notifying respondents, respondents' representatives,

or both, that individual merit hearings have been advanced;

(d) Court personnel's process for selecting a new hearing date when an individual merit

hearing is advanced, including materials that describe how to input rescheduling

information in attorneys' EOIR ECAS calendar;

(e) The agency's implementation of the November 27, 2020, Notice of Proposed

Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings"

(hereinafter, "Proposed Good Cause Rule").[3]

Def.'s Statement of Material Facts Not in Dispute ¶ 2.1, ECF No. 25-2 (Def.'s SMFND).

Plaintiffs then sued Defendant in July 2023 for not making a timely determination on their

request. *See generally* Compl., ECF No. 1.

Defendant unliterally construed Item 1 "to seek records that constitute officially issued

and centrally disseminated guidelines, procedures, protocols, or policies pertaining to" Items 1.a-

e from January 1, 2017, through October 28, 2022, and conducted a two-part initial search for

some of these items. Santiago Decl. ¶¶ 15, 19, 21, 25-28, ECF No. 25-3; *see also* Pls.' SUMF ¶

A. First, Chief Immigration Judge Sheila McNulty "conducted a manual search of her email,"

Santiago Decl. ¶ 19, ECF No. 25-3, after Defendant identified OCIJ "as the office . . . likely to

have" responsive records, forwarded the request to Ms. McNulty and three other OCIJ officials

"to search for responsive records," and determined that Ms. McNulty's presence on ACIJ and

---

[3] Item 2 of Plaintiffs' FOIA request seeks aggregate data for hearing advancements, Def.'s
Statement of Material Facts Not in Dispute ¶ 2.2, ECF No. 25-2, and is not part of the parties'
dispute.

Court Administrator listservs during the period of the request rendered searches by the other officials redundant, *id.* ¶¶ 19-20. Then, in "consult[ation] with OCIJ leadership, including Ms. McNulty, as well as an attorney advisor . . . with knowledge of guidelines, procedures, protocols, or policies applicable to the seventy-two immigration courts," "a search was done" for publicly available records. *Id.* ¶ 21. Defendant did not search for records responsive to Item 1.e since it determined that the Proposed Good Cause Rule "had not, as of the time of the search[es] . . ., resulted in a final rulemaking." *Id.* ¶ 22.

On August 9, 2023, Defendant produced its initial search's results: a single email chain "concerning language access in immigration court," *id.* at 28, and a list of eleven records already available to the public on Defendant's website, *id.* at 25. None of these records is a record of guidelines, procedures, protocols, or policies for hearing advancement, continuance, notification, or date selection sought by Plaintiffs. So, starting in September 2023, the parties met and conferred about another search. Pinto Decl. ¶¶ 4-5. The agency agreed to perform a supplemental electronic search later that month, Santiago Decl. ¶ 25, ECF No. 25-3, but refused Plaintiffs' suggestions to expand its search terms or search ACIJs' emails for regional- and court-specific policies, Pls.' SUMF ¶¶ B-E.

Defendant's supplemental search proceeded in two parts. First, in December 2023, Defendant's Office of Information Technology (OIT) conducted eight keyword searches of Ms. McNulty's email limited to emails sent by her or to the ACIJ or Court Administrator listservs between January 1, 2017, and October 28, 2022, using the following Boolean sequences: (1) Policy AND "advance" AND "merit hearings"; (2) Guidance AND "advance" AND "merit hearings"; (3) Protocol AND "advance" AND "merit hearings"; (4) Procedure AND "advance" AND "merit hearings"; (5) Policy AND "continue" AND "hearing"; (6) Guidance AND

"continue" AND "hearing"; (7) Protocol AND "continue" AND "hearing"; and (8) Procedure

AND "continue" AND "hearing." Santiago Decl. ¶ 26, ECF No. 25-3; Pinto Decl. Ex. A, at 6-7

Then, months later in June 2024, OIT replicated the same keyword searches of "the emails of

Mary Beth Keller and Tracy Short who served in the role of Chief Immigration Judge prior to

Sheila McNulty." Santiago Decl. ¶ 28, ECF No. 25-3. Both parts of the supplemental search

yielded only one responsive record: the language access email chain located earlier. *Id.* ¶¶ 27, 29.

## STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Pinson v. U.S. Dep't of Just.*, 79 F. Supp. 3d 250, 254 (D.D.C. 2015). Summary judgment is

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A 'material' fact is one capable of

affecting the substantive outcome of the litigation," *Heartland All. for Hum. Needs & Hum. Rts.*

*v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 108 (D.D.C. 2019) (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while a genuine dispute is one with "enough

evidence for a reasonable factfinder to return a verdict for the non-movant," *id.* (citing *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007)).

FOIA requires Defendant and other government agencies to "ma[k]e a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.

1990). Courts assess a search's reasonableness *de novo*. *Reps. Comm. for Freedom of the Press v.*

*Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017). Plaintiffs are entitled to

summary judgment on the unreasonableness of Defendant's search if Defendant misconstrued

their request, *Am. Oversight v. U.S. Gen. Servs. Admin.*, 486 F. Supp. 3d 306, 312-13, 317

(D.D.C. 2020) *(Am. Oversight I)*, did not search all locations likely to contain responsive records, *Jud. Watch, Inc. v. U.S. Dep't of State*, 272 F. Supp. 3d 88, 94-95 (D.D.C. 2017), failed to use "twenty-first century technologies" for electronic searches, *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 111, 113 (S.D.N.Y. 2012) *(NDLON)*, or "did not … craft reasonable search terms," *Bader Fam. Found. v. U.S. Dep't of Educ.*, 630 F. Supp. 3d 36, 44 (D.D.C. 2022). Defendant is only entitled to summary judgment if it "submit[s] a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," *Reps. Comm.*, 877 F.3d at 402 (cleaned up), and Plaintiffs offer no "countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search," *Heartland All.*, 406 F. Supp. 3d at 110 (cleaned up). "Any doubts about the adequacy of the search should be resolved in favor of the requester." *Charles v. Off. of the Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 212 (D.D.C. 2010).

## ARGUMENT

Defendant's search was unreasonable. It misinterpreted Item 1 to seek only "officially issued and centrally disseminated guidelines, procedures, protocols, or policies pertaining to the listed subitems." Santiago Decl.  ¶ 15, ECF No. 25-3. It also did not search all locations likely to contain records responsive to these subitems or provide adequate explanation for not searching for records responsive to Item 1.e. Additionally and alternatively, Defendant has not, and cannot, establish that its method for searching identified locations was reasonably calculated to uncover all documents responsive to Item 1 as it construed it. Therefore, the Court should grant Plaintiffs

summary judgment on the unreasonableness of Defendant's search and deny Defendant's motion as to the same.[4]

## I.   Defendant Misconstrued Item 1 of Plaintiffs' Request

Defendant misconstrued Item 1 of Plaintiffs' request by limiting it to "records that constitute *officially issued* and *centrally disseminated* guidelines, procedures, protocols, or policies pertaining to" Items 1.a-e and excluding "practices" related to these subitems "that might be unique to specific immigration courts or immigration judges." Santiago Decl. ¶ 15, ECF No. 25-3 (emphasis added). Defendant must read Plaintiffs' FOIA request "as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and "construe [it] liberally," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), even if it were "not a model of clarity," *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003). It may not "narrow the [request's] scope . . . to exclude materials reasonably within the description provided," *Urban Air Initiative, Inc. v. Env't Prot. Agency*, 271 F. Supp. 3d 241, 255-56 (D.D.C. 2017), or "intuit the 'purpose' of [the] request and impose a corresponding limitation on the associated search," *Am. Oversight I*, 486 F. Supp. 3d at 313. Defendant's "officially issued" and "centrally disseminated" limitations violate these rules.

Defendant's "officially issued" restriction excludes informal and unofficial records of guidelines, procedures, protocols, or policies that reasonably fall within the scope of Plaintiffs' request. In *Nation Magazine*, the D.C. Circuit held that an agency misconstrued a request for

---

[4] Plaintiffs do not dispute Defendant's application of Exemption 6 to email addresses in the language access email chain or the segregation of non-exempt information in that chain. But to the extent that Defendant seeks summary judgment on Plaintiffs' claim for "failure to disclose responsive records," Compl. ¶¶ 37-41, ECF No. 1, summary judgment is inappropriate at this time since Defendant has not yet conducted a reasonable search for responsive records and so may still be failing to disclose all such records.

records "pertaining to" an individual and his offers to assist the agency to seek only records indexed under his name. 71 F.3d at 890. Similarly, in *Nicholls v. U.S. Office of Personnel Management*, the Court found that an agency misunderstood a request for records "relating to" appeals regarding employment termination, denial of employment, or withdrawal of an employment offer to exclude reconsiderations of initial adjudications. 863 F. Supp. 2d 4, 10-11 (D.D.C. 2012). Here, Plaintiffs' request seeks "records of guidelines, procedures, protocols, or policies." Def.'s SMFND ¶ 2.1, ECF No. 25-2. Akin to the language in *Nation Magazine* and *Nicholls*, this language does not limit responsive records to those Defendant has "officially issued" but rather includes any record of a responsive guideline, procedure, protocol, or policy regardless of whether the record itself or the underlying guideline, procedure, protocol, or policy is "officially issued." Construing Plaintiffs' request otherwise omits records that fall within its plain scope.

Defendant's "centrally disseminated" limitation excludes court- and judge-specific guidelines, procedure, protocols, or policies that fall with the plain language of Plaintiffs' request. In *American Oversight I*, the Court found that the agency erred by limiting a request for "communications between or among a set of officials and Trump Organization officials, regardless of subject matter" to those pertaining to a single subject. 486 F. Supp. 3d at 313. Likewise, in *New Orleans Workers' Center for Racial Justice v. U.S. Immigration & Customs Enforcement*, the agency erred by interpreting a multipart request to seek only records about an agency initiative referenced in some parts of the request despite other parts seeking generalized statistics, training, guidance, procedures, and rules that "reach[ed] beyond [that initiative's] objectives." 373 F. Supp. 3d 16, 34 (D.D.C. 2019) (record citations omitted). Here, like the requests in *American Oversight I* and *New Orleans Workers' Center,* the plain language of

Plaintiffs' request does not refer only to "centrally disseminated" guidelines, procedures, protocols, or policies. *See* Def.'s SMFND ¶ 2.1.a-d, ECF No. 25-2 (asking for "immigration courts' process[es]" and "immigration judges' adjudication of motions to continue"). Liberally construed, the plural, possessive terms "immigration courts'" and "immigration judges'" contemplate court- or judge-specific responsive records. In limiting the request to "centrally disseminated" records, Defendant has "intuit[ed]" a purpose for Plaintiffs' request and "impose[d] a corresponding limitation on the associated search," which FOIA does not allow. *Am. Oversight I*, 486 F. Supp. 3d at 313.

None of Defendant's three arguments for its narrow construction of Plaintiffs' request is convincing. First, Defendant contends that any broader construction of the request is "unduly burdensome" since it would require "the agency to review the docket in every immigration case over the five-year period at issue . . . to try to identify any case-specific application of the type of guidelines, procedures, protocols, or policies requested." Def.'s Mem. in Support of Mot. for Summ. J. 6, ECF No. 25-1 (Def.'s Mem.) (citing Santiago Decl. ¶ 17, ECF 25-3). This "conclusory statement[]" does not detail the time and expense that searching for records responsive to Plaintiffs' construction would entail and so is not "sufficient explanation" for why that construction is "unreasonably burdensome." *Prop. of the People, Inc. v. U.S. Dep't of Just.*, 530 F. Supp. 3d 57, 63-64 (D.D.C. 2021). It also slays a strawman: Plaintiffs have not asked Defendant to search the docket of every immigration case over the period at issue for records responsive to the appropriate construction of their request, as less burdensome methods for searching for these records exist. *Cf. Pinson v. U.S. Dep't of Just.*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015) (rejecting similar agency argument for "not explain[ing] why a more limited search would be unfruitful").

Second, Defendant argues that broader construction of Plaintiffs' request is "inconsistent with the obligation under FOIA that a requester reasonably describe the records sought." Def.'s Mem. 6, ECF No. 25-1. Whether Plaintiffs' request provides a reasonable description of records is "highly context-specific." *Nat'l Press Club Journalism Instit. v. U.S. Immigr. & Customs Enf't*, Civil Action No. 18-2932, 2023 WL 9001337, at *5 (D.D.C. Dec. 28, 2023) (citation omitted). Yet Defendant does not identify unclear phrases or otherwise explain why "a professional employee of the agency who was familiar with the subject area of [Plaintiffs'] request" cannot locate records responsive to a broader construction "with reasonable effort." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). Such "conclusory" assertions of vagueness cannot support a finding of inadequate description. *Pinson v. U.S. Dep't of Just.*, 245 F. Supp. 3d 225, 245 (D.D.C. 2017). And insofar as Defendant contends that the request's descriptive defect is the burden it imposes, *see* Def.'s Mem. 6, ECF No. 25-1, that burden is "irrelevant to the determination of whether [the requested records] have been reasonably described," *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up).

Finally, Defendant asserts that it "had no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols, or policies related to subitems 1.a. to 1.d. of the request." Def.'s Mem. 5, ECF No. 25-1 (citing Santiago Decl. ¶ 15, ECF No. 25-3). But its declarant provides no foundation for this opinion. *See* Santiago Decl. ¶ 15, ECF No. 25-3. Lacking an "objective basis," this lay opinion is inadmissible under Federal Rule of Evidence 701 since the Court cannot assess (and Plaintiffs cannot challenge) whether the opinion is "rationally based on the [declarant]'s perceptions." *United States v. Hampton*, 718 F.3d 978, 981 (D.C. Cir. 2013). But even if the opinion were admissible, it is not persuasive. It conflicts with the existence of numerous court-specific guidelines, procedures, and protocols as matters of

policy or practice, *see* Pls.' SUMF ¶¶ I-J, including some on advancing, continuing, and setting

hearings, *see* Pinto Decl. Ex. C, at 95-96, 147, 150, 162, 166-67; Ex. D, at 183, 30:24-31:10.

## II.     Defendant Did Not Search All Repositories Likely to Contain Responsive Records

Defendant has not, and cannot, show that it searched all locations likely to contain

records responsive to Item 1 of Plaintiffs' request. Defendant must search every record system

"likely to turn up the information requested," *Oglesby*, 920 F.2d at 68, and provide adequate

justification for any decision to not search for records responsive to part of a request, *see Morely

v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). Instead, Defendant admits to not searching for

records responsive to Item 1.e without providing sufficient explanation for concluding that no

such records exist. As for Items 1.a-d, Defendant does not claim to have searched all locations

likely to contain responsive records. But even if it had, its claim would be unpersuasive since

Defendant did not search ACIJs' emails or OCIJ shared drives for responsive records.

### A.   *Defendant's Justification for Not Searching for Item 1.e Records Is Inadequate*

Defendant's explanation for not searching for records responsive to Item 1.e is

inadequate. Where an agency justifies not searching for responsive records based on a belief that

none exist, it must offer a reasonable foundation for that belief. *See Democracy Forward Found.

v. U.S. Dep't of Just.*, Civil Action No. 17-1877, 2022 WL 17177497, at *6 (D.D.C. Nov. 23,

2022); *Pinson v. U.S. Dep't of Just.*, Civil Action No. 12-1872, 2017 WL 6887041, at *11-12

(D.D.C. Aug. 31, 2017). In *Democracy Forward Foundation*, the Court found that determining

that no "email records and other written correspondence" of a meeting existed after conversing

and exchanging emails with meeting participants was not reasonable. 2022 WL 17177497, at *6.

Here, Defendant did not search for records responsive to Item 1.e once it "determined that the

notice of proposed rulemaking had not, as of the time of the search . . ., resulted in a final

rulemaking." Santiago Decl. ¶ 22, ECF No. 25-3. Yet this explanation ignores that Defendant's operative policy for continuances directed immigration judges to the Proposed Good Cause Rule from January 8, 2021, to April 18, 2022, for the "wealth of potentially helpful information [therein] regarding continuance requests in immigration proceedings." Pls.' SUMF ¶ O. By overlooking its informal implementation of aspects of the Proposed Good Cause Rule, Defendant has not offered sufficient foundation for determining that records responsive to Item 1.e do not exist.

B.   *Defendant's Initial and Supplemental Searches Excluded Locations Likely to Contain Records Responsive to Items 1.a.-d*

Defendant has not, and cannot, establish that it searched "all files likely to contain responsive materials" as FOIA requires. *Oglesby*, 920 F.2d at 68. Its declaration explains Defendant's choice to search the emails of three current and former Chief Immigration Judges for records not available to the public, Santiago Decl. ¶¶ 18-22, 26-29, ECF No. 25-3, but does not state that these emails are "the *only* possible place that responsive records are likely to be located," *Oglesby*, 920 F.2d at 68. Absent such evidence, the Court cannot grant Defendant summary judgment on its search. *See Stonehill v. U.S. Dep't of Just. Tax Div.*, No. 1:19-cv-03770, 2022 WL 407145, at *9 (D.D.C. Feb. 10, 2022).

Additionally, searching only the emails of current and former Chief Immigration Judges omits other repositories likely to contain responsive documents, particularly ACIJs' emails and OCIJ shared drives. Defendant "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. Rather, it must search each repository that evidence suggests contains responsive records or provide adequate explanation for not doing so. *Reps. Comm.*, 877 F.3d at 405-06; *Jud. Watch*, 272 F.

Supp. 3d at 94. In *Reporters Committee*, the D.C. Circuit deemed an agency's search unreasonable for only searching its tech division for records about malware tactics despite the record showing that other divisions had deployed malware during a sting operation. 877 F.3d at 405-06. Similarly, in *Judicial Watch*, the Court found an agency's search unreasonable for not searching the official email accounts of three aides to a former Secretary of State for emails from the Secretary since these accounts were "almost certain to contain some responsive records" not captured in the agency's searches of private email servers. 272 F. Supp. 3d at 94.

Here, the record shows that ACIJs have policy making authority over immigration courts in their areas of responsibility, Pls.' SUMF ¶¶ G-I, and have exercised that authority to set court-specific policies, including those for continuances and resolving cases without hearings, *see, e.g.*, Pinto Decl. Ex. C, at 95-96, 147, 150, 162 166-67. The record also establishes that, like the email accounts in *Judicial Watch*, shared drives accessible by the Chief Immigration Judge and ACIJs are almost certain to contain some responsive records, as Defendant has searched them for records responsive to at least one other FOIA request for immigration courts' policies. *See* Pls.' SUMF ¶¶ K-N. As such, Defendant's failure to search ACIJ emails and shared drives for responsive records or provide adequate explanation for not doing so renders its search unreasonable. *See Reps. Comm.*, 877 F.3d at 405-06.

III.     **Defendant's Search Methods Were Not Reasonably Calculated to Uncover All Responsive Documents**

Even if Defendant had properly construed Item 1 of Plaintiffs' request and searched the appropriate locations for records responsive to its construction, it has not, and cannot, establish that its "methods" for searching these locations were "reasonably expected to produce" these records, as FOIA requires. *See Oglesby*, 920 F.2d at 68. Defendant has not reasonably described

its initial two-part search. As for the supplemental search, a unilateral, unrefined keyword search of an email account like the one Defendant thrice performed is not reasonably calculated to identify all responsive records in that account. Even if it were, the keywords Defendant used for this search were not reasonably tailored to locate these records.

### A.  *Defendant's Description of Its Initial Search Lacks Sufficient Detail*

Defendant has not provided a reasonable description for its two-part initial search. A declaration is "not sufficiently detailed to support summary judgment" where it does not "disclose the search terms" and "the type of search performed." *Debrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 738-39 (D.C. Cir. 2017) (requiring an agency to describe its method for manually searching two case files for responsive documents); *Reps. Comm.*, 877 F.3d at 403 (mandating an agency to do more than say that its searches were "completed"). Like the declarations rejected by the D.C. Circuit in *Debrew, Aguiar*, and *Reporters Committee*, Defendant's declaration avers only that Ms. McNulty "conducted a manual search of her email" in part one of the initial search and "a search was done to identify publicly available documents" in part two. Santiago Decl. ¶¶ 19, 21, ECF No. 25-3. True, the declaration explains why the agency tasked Ms. McNulty with part one and lists those consulting on the search for part two. *Id.* But "merely" identifying those "responsible for finding responsive documents" does not cure a failure to identify search terms and methods. *Morely*, 508 F.3d at 1122.

### B.  *Defendant's Supplemental Search Was Unreasonable, Both as to Method and Keywords.*

Defendant's supplemental search was not reasonably calculated to uncover all relevant documents. Keyword searches' inherent unreliability precluded Defendant from ending its

supplemental search after unilaterally devising a single set of keywords and using it to search three email accounts. Additionally, the keywords Defendant used to perform these three searches were not reasonably tailored to finding responsive records.

1.   <u>Unilateral Keyword Searches Are an Unreasonable Search Method</u>

A unilateral keyword search like the one Defendant performed in three email accounts is not a reasonable search method. "[W]ithout testing and refinement (or more sophisticated techniques)," keywords "will . . . not be reasonably calculated to uncover all responsive material." *NDLON*, 877 F. Supp. 2d at 110. On average, keyword searching a large record repository like an email account identifies only twenty percent of responsive documents. Pls.' SUMF ¶ P. The inherent malleability and ambiguity of spoken and written English makes simple keyword searches under-inclusive: they miss documents that contain a word that has the same meaning as a keyword but is not specified and exclude common or inadvertent misspellings of search terms. *Id.* ¶ Q; *see also NDLON*, 877 F. Supp. 2d at 111 ("[K]eyword and Boolean searches often fail to identify responsive documents because the author used different words to discuss the subject." (cleaned up)).

Keyword search limitations, though, "can be at least partially overcome by employing a more methodical and informed approach to defining keywords." Pinto Decl. Ex. N, at 302. Iterative searching "use[s] the responses . . . obtain[ed]" from one keyword search (or the lack thereof) "to generate more precise searches." *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 113 (D.D.C. 2023); *see also* Pinto Decl. Ex. N, at 314. "[T]esting … the efficacy of [search] terms" enhances quality control. *NDLON*, 877 F. Supp. 2d at 111; *see also* Pinto Decl. Ex. N, at 302. And cooperation and greater transparency among parties improves keyword searches' quality. Pls.' SUMF ¶ R; *see also NDLON*, 877 F. Supp. 2d at 111

(ordering the parties "to work cooperatively to design" searches). Defendant offers no evidence that its supplemental search was reasonably calculated to locate all records responsive to Plaintiffs' request despite the inherent unreliability of keyword searches and its decision to not apply best practices for this method in its supplemental search. *See* Santiago Decl. ¶¶ 19-28, ECF No. 25-3.

### 2. Defendant's Keywords Are Unreasonable

Even if a unilateral keyword search were an appropriate search method here, Defendant has not, and cannot, show that its keywords were reasonable. "[A] federal agency has discretion in crafting a list of search terms that [it] believes to be reasonably tailored to uncover documents responsive to the FOIA." *Am. Oversight I*, 486 F. Supp. 3d at 314 (cleaned up). But keywords may not "focus" on specific words in a request "while ignoring the [request's] broader scope." *Avila v. U.S. Dep't of State*, No. 17-2685, 2022 WL 2104483, at *5 (D.D.C. June 10, 2022). Nor may they be compound, *Bader Fam. Found.*, 630 F. Supp. 3d at 41-42, plural, *Immigr. Def. Project v. U.S. Immigr. & Customs Enf't*, 208 F. Supp. 3d 520, 529 (S.D.N.Y. 2016), or omit "obvious alternative terms without a detailed justification," *Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024) (*Am. Oversight II*). Defendant's keyword search violates each of these principles.

The term "merit hearings" in parts 1-4 of the search is unreasonable for being compound and plural and excluding records that refer to this hearing using an alternative term or phrase. *See Bader Fam. Found.*, 630 F. Supp. 3d at 41-42; *Immigr. Def. Project*, 208 F. Supp. 3d at 529. In *Bader Family Foundation*, the Court deemed that using only the terms "school discipline" and "school disciplinary policies" to search emails was unreasonable for two reasons: (i) the terms "excluded any emails that contained even the slightest modifications of those terms," e.g.,

"emails discussing 'policies for disciplining students in school' or even 'school disciplinary policy'"; and (ii) the terms omitted "obvious substitutes" for "school," "discipline," and "policy." 630 F. Supp. 3d at 42. Similarly, in *Immigrant Defense Project*, the U.S. District Court for the Southern District of New York found that terms "home enforcement operations," "enforcement operations," "arrest statistics," and "quotas" were unreasonable because searching by these plural terms omitted records containing only their singular forms. 208 F. Supp. 3d at 529. So too as to "merit hearings." At minimum, searching by this term in parts 1-4 does not return records that refer to the hearing at issue using the terms "merit hearing" or "merits hearing," the synonyms "individual calendar hearing" or "individual hearing," Pls.' SUMF ¶ S, or the phrase "hearing on the merits." Defendant should have used the singular term "hearing" in its parts 1-4 of its electronic search, just like it did for parts 5-8 of that search.

Defendant's keywords are also unreasonable for obvious substitutes for the terms "advance" and "continue" without explanation. *See Am. Oversight II*, 101 F.4th at 923; *Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018). In *American Oversight II*, the D.C. Circuit held that using "health care reform," "ACA," and "AHCA" but not "Obamacare" and "repeal and replace" to search for "records relating to health care reform" without explanation was unreasonable. 101 F.4th at 923-24 (internal quotation marks omitted). Similarly, in *Government Accountability Project*, the Court found that searching emails "only for the word 'cellphone' [was] inadequate" since it would not return records with "variants that may well be used in correspondence—like the two-word version 'cell phone' or simply 'phone.'" 335 F. Supp. 3d at 12. Here, Defendant's keywords lack synonyms and logical variants for "advance" and "continue" like "change," "defer," "delay," "re-schedule," "move up," "postpone," or "pushback" without explanation. As Plaintiffs' request seeks records of

guidelines, procedures, protocols, or policies "relating to" advancements and continuances, Def.'s SMFND ¶ 2.1, ECF No. 25-2, "not just ones using those exact [terms]," failure to justify omitting obvious substitutes for these terms is unreasonable, *Bader Fam. Found.*, 630 F. Supp. 3d at 42.

Finally, Defendant's keywords are unreasonable for their focus on the terms "policy," "guidance," "protocol," or "procedure" at the expense of the wider scope of Plaintiffs' request. *See Avila*, 2022 WL 2104483, at *5. In *Avila*, the Court found that searching only by the name of an individual injured in an attack recounted in the request was unreasonable where the request sought "all records concerning" that individual, including communications that "refer or relate to" that individual because that search "would miss records of the attack that do not specifically mention [the individual]'s name, but which are nonetheless responsive." *Id.* Here, Plaintiffs' request seeks "records of guidelines, procedures, protocols, or policies."  Def.'s SMFND ¶ 2.1, ECF No. 25-2. Like the words "concerning" and "refer or relate to" in the *Avila* request, the preposition "of" "show[s] that Plaintiffs seek more than just records" labeled with or containing these terms. 2022 WL 2104483, at *5. Searching by these keywords excludes records that discuss a responsive policy, guidance, protocol, or procedure without mentioning one of these four terms and so is unreasonable. *See id.*

Defendant defends its keywords for being "drawn from the language of the request." Def.'s Mem. 8, ECF No. 25-1. Yet "FOIA requests are not a game of Battleship." *Gov't Accountability Project*, 335 F. Supp. 3d at 12. Plaintiffs "should not have to score a direct hit on the records sought based on the precise phrasing of [their] request." *Id.* Instead, Defendant must devise keywords "reasonably tailored to uncover documents responsive to" Plaintiffs' request, not parrot words from it. *Am. Oversight I*, 486 F. Supp. 3d at 314.

## CONCLUSION

Defendant has yet to conduct a reasonable search for records responsive to Item 1 of Plaintiffs' request. Instead, as set forth above, Defendant misconstrued the request, overlooked email accounts and other file systems likely to contain responsive records, and failed to follow modern methods for electronic searches. Therefore, the Court should grant Plaintiffs summary judgment on the unreasonableness of Defendant's search, deny Defendant summary judgment on this issue, and order Defendant to conduct a reasonable search within twenty business days and make responsive records identified in that search promptly available to Plaintiffs.

Respectfully submitted,

By:   /s/ Chris Opila
Christopher ("Chris") Opila (NY0576)*
American Immigration Council
2001 L Street N.W., Suite 500, PMB2026
Washington, DC 20036
202-507-7699 | copila@immcouncil.org

Raul Pinto
D.C. Bar No. 90013180
American Immigration Council
2001 L Street N.W., Suite 500, PMB2026
Washington, DC 20036
(202) 507-7549 | rpinto@immcouncil.org

*Application for admission to D.C. Bar pending