UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>        Defendant. | Civil Action No. 23-1952 (RC) |

**COMBINED REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

Plaintiff has opposed Defendant's motion for summary judgment in this Freedom of Information Act ("FOIA") matter by challenging only the adequacy of Defendant's search for records in response to the first item of the FOIA request.  In the same filing, Plaintiff also has cross-moved for summary judgment on the same issue.  Defendant addresses below the arguments that Plaintiff has made regarding the search and, as demonstrated below, none of those arguments warrants denial of Defendant's motion.  Accordingly, summary judgment should be granted to Defendant and Plaintiff's cross-motion should be denied.

**ARGUMENT**

**I.   Defendant Properly Interpreted Item 1a-d of The Request**

Plaintiffs assert that Defendant misconstrued item 1 of the request—and specifically subparts "a" through "d" of that item—by understanding it as seeking officially issued and centrally disseminated guidelines, procedures,  protocols or policies and excluding "practices" that might be unique to specific immigration courts or judges. Opp'n (ECF No. 26-1) at 8.  However, as the D.C. Circuit recently has held, "[a]gencies have the discretion to construe requests

reasonably." *Kowal v. Dep't of Just.*, 107 F. 4th 1018, 1028 (D.C. Cir. 2024). A reasonable interpretation includes reviewing the language of the request but also applying the agency's knowledge of how records are maintained within the agency to construe what the request is seeking. *Id.* For instance, agencies "do not need to honor unreasonably burdensome requests, boiling the ocean in search of responsive records," and thus, between an interpretation that would result in undue burden and one that would not, agencies have "discretion" to choose the latter. *See id.* at 1028-29. Here, with over seventy-two immigration courts across the country handling over 300,000 hearings annually, it would not be reasonable to construe the request as seeking records at a case-specific level, Santiago Decl. (ECF No. 25-3) ¶ 17; Supp. Santiago Decl. ¶ 2, and Plaintiff does not appear to assert otherwise. *See* Opp'n at 10.

Plaintiff, however, does contend that Defendant's interpretation excludes court and judge specific "practices" (Opp'n at 8) and, separately, "court-and judge-specific guidelines, procedure, protocols, or policies." *Id.* at 9. As an initial matter, item 1 of the request does not ask for records related to the "practices" of immigration courts and judges. The term "practices" is not contained in the request, nor is the request broadly worded as seeking "all" records. Instead, the request asks for Executive Office for Immigration Review "records of guidelines, procedures, protocols, or policies." Moreover, as established in the agency's declarations, the type of records requested—guidelines, procedures, protocols and policies related to continuance or advancement of individual merit hearings—are promulgated by the Office's leadership within its Office of Chief Immigration Judge, not individual immigration courts and judges. Santiago Decl. (ECF No. 25-3) ¶¶ 15-16; Supp. Santiago Decl. ¶¶ 2-3, 9.

Thus, as phrased, the request necessarily sought centrally issued records. That was not a limitation on the scope of the request by the agency but an interpretation that accorded with the

language of the request and the reality of how guidelines, procedures, protocols, and policies of the type requested are issued within the Office. Although the policies and procedures developed by leadership within the Office are implemented by immigration judges as a particular case may warrant, Supp. Santiago Decl. ¶ 2, the request did not seek records at a case-specific level and would have been unreasonably burdensome had it done so. *Id*.; *see* Opp'n at 10.

In the same vein, Plaintiffs' assertion that the request should be interpreted as seeking "unofficial" guidelines, procedures, protocols, and policies also is misplaced. Records of guidelines, procedures, protocols and policies are by their nature not "unofficial" since they do not have effect until they are officially issued by Office leadership. Supp. Santiago Decl. ¶ 8. To the extent Plaintiffs' use of the term "unofficial" in their opposition is intended to encompass records not posted to the Office's intranet or external website, the agency's search (which included a search of email of Office leadership) was broad enough to encompass any such documents. *Id.*

In asserting that Defendant's interpretation of the request is contrary to case law (Opp'n at 10-12), Plaintiffs fail to account for the D.C. Circuit's recent decision in *Kowal* which involved a similar contention that an agency had interpreted a request too narrowly. In *Kowal*, the requester sought "all documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of" of a particular criminal defendant (Troya) and challenged as unduly narrow the agency's interpretation of the request as seeking only the investigative files related to the criminal proceeding referenced in the request. *Kowal*, 107 F. 4th at 1026. Because the request did not state that it was limited to the identified criminal proceeding, the requester argued that the agency interpreted the request too narrowly and, by extension, undertook an unduly narrow search by failing to search for "all records mentioning Troya" or his alias. *Id*. at 1028. As the D.C. Circuit observed, however, despite the "all documents" formulation

of the request, Kowal only requested records "'pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of Daniel Troya,'" and the request identified a specific criminal proceeding that added further context.  Holding that agencies "have the discretion to construe requests reasonably," the Court held that the agency reasonably understood the request as seeking the investigative file for the specified criminal proceeding (as opposed to all documents referencing Troya), and that, accordingly, it properly concluded its search once that investigative file was found in the record systems where such files are ordinarily maintained.  *Id.* at 1028-29.

The same result applies here.  Plaintiffs did not request all documents related to how immigration courts implement guidelines, policies, procedures and protocols concerning continuances or advancements of individual merit hearings.  Item 1a-d of the request was more narrow, limited to seeking the records constituting the guidelines, policies, procedures and protocols themselves.  Because records of the type requested are issued centrally by the Executive Office for Immigration Review (via its Office of the Chief Immigration Judge), the agency understood the request as seeking records issued by that office and properly focused its search on that office.  The agency had "discretion to construe" the request in this manner, particularly when any other construction would either be unreasonably burdensome or not align with how the requested guidelines, policies, procedures and protocols are issued.

The agency's declarant, moreover, attests that the Office "has no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols or policies related to the subitems specified in the request that would deviate from any centrally issued guidelines, procedures, protocols or policies" or that Assistant Chief Immigration Judges "would be disseminating responsive guidelines, procedures, protocols and policies that are specific to the

respective courts that they oversee." Santiago Decl. (ECF No. 25-3) ¶ 15; Supp. Santiago Decl. ¶ 9. Plaintiffs have failed to adduce any countervailing evidence that could raise a genuine dispute as to this issue. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The documents attached as Exhibit C to Plaintiffs' opposition are not evidence of overlooked responsive records as Plaintiffs wrongly suggest. *See* Opp'n at 11-12; Pinto Decl. (ECF No. 26-3) at Ex. C. Those documents are standing orders that govern how parties and their counsel practice before certain immigration courts and address such things as telephonic appearances, electronic filings, and accommodations during the COVID-19 pandemic. Supp. Santiago Decl. ¶¶ 3-4. They do not reflect Office policies, procedures, guidelines or protocols concerning how immigration courts are to make decisions regarding continuing or advancing individual merit hearings, which is what the request seeks. *Id*. Plaintiffs' citation to Exhibit D of their filing, and specifically, pages 30-31 of that deposition transcript, also is misplaced. *See* Opp'n at 11. That deposition transcript, which reflects testimony from an individual who retired from the Office prior to the period of the FOIA request, does not reference any written policy, procedure, guidelines or protocols that would be responsive to item 1 of the FOIA request. Smith Dep. (Ex. D to Pinto Decl.) at 8, 30-31.

Contrary to Plaintiffs' assertion (Opp'n at 11), a FOIA declarant also does not require personal knowledge to provide competent evidence in support of a motion for summary judgment. *See, e.g., Montgomery v. IRS*, 40 F. 4th 702, 716 (D.C. Cir. 2022). It is sufficient, as here, for the declarant to obtain information from individuals in the agency with knowledge. *Id*.; Supp. Santiago Decl. ¶ 1. Accordingly, Defendant has established that it reasonably construed item 1a-d of the FOIA request.

## II.   **Defendant's Search Was Reasonable**

Plaintiffs contend that Defendant's search was not adequate because it did not search "all repositories likely to contain responsive records" and did not use search methods "reasonably calculated to uncover all responsive documents." Opp'n at 12, 14. Defendant addresses each argument in turn and, as shown below, neither has merit.

### A.   **Defendant Adequately Explained Its No-Records Response to Item 1e of the Request and Searched Locations Likely To Contain Responsive Records as to Items 1a-d of the Request.**

#### 1.   The Agency Had a Sufficient Basis for Its No-Records Response to Item 1e of the Request.

Plaintiffs first contend that the Defendant failed to provide "sufficient explanation for concluding" that no responsive records existed for item 1e of the request. Opp'n at 12. That item of the request sought "guidelines, procedures, protocols, or policies relating to . . . [t]he agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings" (hereinafter, "Proposed Good cause Rule"). FOIA Request (ECF No. 25-3) at ECF pp. 17-18.  Because that notice of proposed rulemaking had not resulted in a final rulemaking, the Office determined that it would have no guidelines, procedures, protocols, or policies implementing the proposed rule. Santiago Decl. (ECF No. 25-3) ¶ 22. Under the Administrative Procedure Act, a notice of proposed rulemaking is one step in the process of adopting a rule that can have legal effect (and thereby be implemented) only once it is finalized. 5 U.S.C. § 553(b).

Plaintiffs assert without basis that the agency's explanation for its no-records response— that the proposed rule has not resulted in a final rulemaking that could be implemented—is inadequate.  Plaintiffs contend that the agency's "explanation ignores that Defendant's operative policy for continuances directed immigration judges to the Proposed Good Cause Rule . . . for the

'wealth of potentially helpful information [therein] regarding continuance requests in immigration proceedings.'"   Opp'n at 13.[1]   Based on this reference, Plaintiffs assert that the Defendant "overlook[ed] its informal implementation of aspects of the Proposed Good Cause Rule."  *Id.*

That, however, is a misguided assertion.   The FOIA request sought policy documents implementing a rule that had not been adopted at the time of the request but remained at the proposal stage.   A policy referencing a proposed rule as a source of "potentially helpful information" is not a policy that implements the rule that is being proposed, nor can it be reasonably characterized as an "informal implementation of aspects" of the proposed rule.   That distinction is made clear in the policy document (PM 21-13) on which Plaintiffs rely for this argument.   The full quotation, which Plaintiffs only excerpt in part, states that "[a]lthough the [Notice of Proposed Rulemaking] has not been finalized—and, thus, the proposed regulatory changes in the [Notice] are not in effect—it nevertheless contains a wealth of potentially helpful information for adjudicators regarding continuance requests in immigration proceedings."  Pinto Decl. (ECF No. 26-3) Ex. J at ECF p. 239.   It further notes that, "[i]f the [Notice of Proposed Rulemaking] is finalized and becomes effective, *then* [the Executive Office for Immigration Review] will provide specific guidance on the final rule's regulatory provisions accordingly."  *Id.* at ECF p. 239 n.6 (emphasis added).   Thus, the policy document on which Plaintiffs rely confirms that "specific guidance" will not issue until the proposed rule is finalized and becomes effective.

That is not inconsistent with the notice serving as a "potentially helpful" source of information.   The notice explained that "case law sets forth multi-factor balancing approaches to

---

[1]   The policy document on which Plaintiffs rely for this argument (PM 21-13) was one of the publicly available documents to which Plaintiffs were referred by the agency in its August 9, 2023 response letter.   Letter (ECF No. 25-3) at ECF p. 25.   Thus, Defendant does not understand Plaintiffs to be contending that this policy document was overlooked by the agency's search.

the good cause standard for motions for a continuance," provided a lengthy discussion of that case law, and proposed a rule "to codify those parameters and add requirements and clarifications where needed." *See* Proposed Good Cause Rule, 85 FR 75925-75939 (Nov. 27, 2000).  Given the lengthy discussion of case law in the notice, it remained a research source even though the rule it proposed had not yet been adopted.  For the same reasons, the reference to the notice as a proposed research source, moreover, cannot be fairly construed as an "informal implementation of aspects of the Proposed Good Cause Rule" as Plaintiffs baselessly assert.

2.    Defendant Searched Locations Likely To Contain Responsive Records With Respect To Item 1a-d of the Request.

As set forth in Defendant's motion, the type of records requested in items 1a-d of the request—guidelines, procedures, protocols and policies related to continuance or advancement of individual merit hearings—are promulgated by the Office of Chief Immigration Judge and, if not posted on the agency's website, are disseminated to Assistant Chief Immigration Judges (they are not promulgated by Assistant Chief Immigration Judges, individual immigration courts or individual immigration judges).  Santiago Decl. (ECF No. 25-3) ¶¶ 15-16; Supp. Santiago Decl. ¶¶ 2-3, 9.  Thus, in response to those items of the request, a manual search was conducted by Sheila McNulty, at the time a Regional Deputy Chief Immigration Judge who previously was an Assistant Chief Immigration Judge and shortly after the request issued became Chief Immigration Judge. Santiago Decl. (ECF No. 25-3) ¶ 19.  In those positions, which spanned the period of the request, Judge McNulty "would have either received, been copied, or sent all policy changes within [the Office of Chief Immigration Judge], including guidelines, procedures, protocols or policies related to the operation of the immigration courts not otherwise published and publicly available.  *Id.*

In addition to that manual search, a keyword search also was conducted within the emails sent by Judge McNulty to the group emails for Assistant Chief Immigration Judges and Court

Administrators, and a similar keyword search was conducted of the emails of her predecessors in the Chief Immigration Judge role during the period of the request (Judges Keller and Short). *Id.* ¶ 28.

The agency, therefore, adequately established that it searched locations where responsive records were likely to be located. Its search was "tailored to the nature" of the request, *Campbell v. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), and used methods calculated to identify the records sought. *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011); *see also Watkins Law & Advocacy v. Dep't of Just.*, 78 F. 4th 436, 444 (D.C. Cir. 2023) (an agency need only show that it made "'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested'").

Plaintiffs contend that these searches omitted "other repositories likely to contain responsive documents, particularly [Assistant Chief Immigration Judges'] emails and [Office of the Chief Immigration Judge] shared drives." Opp'n at 13. However, because Assistant Chief Immigration Judges as a group would be the recipients of policies, procedures, guidelines and protocols disseminated by the Office of Chief Immigration Judge, and would not themselves develop or publish  documents of the type requested in items 1a-d of the request that do not originate from that Office, Supp. Santiago Decl. ¶¶ 2-3, there was no need to separately search their email. *Id.* ¶ 9. Contrary to Plaintiffs' assertion, an agency is not required to conduct searches that would be cumulative of the search that was undertaken. *See Kowal*, 107 F. 4th at 1029 ("The DEA searched the system and found five criminal investigative files for Troya. Because the DEA located the files mentioned in Kowal's request, there was no need to separately search for additional records indexed under Troya's alias."); *see also Watkins*, 78 F. 4th at 442 ("An agency

need not . . . 'demonstrate that all responsive documents were found and that no other relevant documents could possibly exist.'")

Plaintiffs also are mistaken in suggesting that the documents attached as Exhibit C to Plaintiffs' filing demonstrate that policies and procedures on the matters at issue in item 1a-d of the request, that is, continuances of individual merit hearings, originate with Assistant Chief Immigration Judges.  As already addressed above, the documents attached to Exhibit C are standing orders applicable to specific immigration courts that govern how attorneys and parties appear and practice before those courts, including with respect to telephonic appearances and electronic and email filings.  They do not relate to how immigration judges are to consider continuances of individual merit hearings and thus do not support Plaintiffs' assertion that Assistant Chief Immigration Judges issue their own policies, procedures, guidelines and protocols to immigration courts on such matters independent of OCIJ leadership.

Equally misplaced is Plaintiffs' speculation that shared drives would likely contain responsive records.  Opp'n at 13.  Although the agency's operating system may allow for the creation of shared drives, such drives are not used to store the types of policy documents requested in items 1a-d of the request.  Supp. Santiago Decl. ¶ 7.  Policies and procedures are maintained on the agency's intranet, and a search of the agency's intranet contained one responsive intranet link that directs users to the agency's public facing website. *Id.* ¶ 6.  Plaintiffs' purported evidence is not to the contrary as it relates to the agency's response to a different FOIA request regarding a Department of Homeland Security enforcement program called "Secure Communities" in which the search encompassed Assistant Chief Immigration Judges "identified as participating in discussions with [the Department] regarding Secure Communities."  Pinto Decl. (ECF No. 26-3) at Ex. G ¶ 11, Ex. H ¶ 13.  The search conducted in response to that unrelated request has no bearing on the adequacy of the search conducted here.

B.      **Defendant's Search Methods Were Reasonable.**

The reasonableness of a search is evaluated based on its totality, not piecemeal, and therefore, Plaintiffs' suggestion (Opp'n at 15) that the Court should focus on the agency's initial search independent of its supplemental search is misplaced.  *Watkins*, 78 F. 4th at 444 ("The FBI's original and supplemental search efforts, taken together, were reasonable.")  Taken together, the searches conducted by the agency—which included a manual search by Judge McNulty of her mail and keyword searches of the emails of Judge McNulty and her predecessors in the  Chief Immigration Judge position, as well as a search of the agency's intranet and publicly facing website—were reasonably calculated to locate responsive records.

Equally misplaced is Plaintiffs' suggestion that a keyword email search is not a reasonable method to search for responsive records because it is "inherent[ly] unreliable."   Opp'n at 16-17. That argument is largely based on research articles attached to Plaintiffs' filing that are hearsay and thus "count[] for nothing" at the summary judgment stage. *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). It also ignores precedent upholding the adequacy of keyword searches similar to the type utilized here.  *Watkins*, 78 F. 4th at 444-45.   Finally, it fails to account for the additional searches that were done, including a manual search by Judge McNulty.  Because "adequacy—not perfection—is the standard that FOIA sets," *DiBacco v. Army,* 795 F.3d 178, 191 (D.C. Cir. 2015), Plaintiffs' challenge to the agency's use of keywords as a method of searching email should be rejected.

Plaintiffs also challenge as inadequate the specific keywords that the agency utilized, asserting that the term "merit hearings" used in the first four (of eight) keyword searches was unreasonably narrow because it did not account for other possible variations, such as "merit hearing," or what Plaintiffs contend to be synonymous terms, "individual hearing" or "individual calendar hearing."  Opp'n at 17-18.  But that argument ignores that the agency conducted four

additional searches (searches five through eight) that used only the term "hearing."  Santiago Decl. (ECF No. 25-3) ¶ 26.   As described in the agency's declaration, those searches would have identified any emails that referenced the term "hearing" along with the following terms appearing anywhere else in the email: "protocol" (or "policy", "guidance", or "procedure") and "continue." *Id.*

Plaintiffs have failed to explain how those searches were inadequate, except to contend that additional synonyms to the word "continue" should have been used.  Opp'n at 18.  But the term "motion to continue" (and not the alleged synonyms proposed by Plaintiffs in their opposition) was the term used in the FOIA request and a continuance is how the agency refers to the type of relief that is the subject of items 1a-d of the request.  *See* Pinto Decl. (ECF No. 26-3) at Ex. J (attaching PM 21-13 entitled "Continuances"); *see also* 8 C.F.R. § 1003.29 ("Continuances").

Plaintiffs' argument also fails to account for the fact that Judge McNulty conducted a manual search of her email and that the results of that search were the same as the results of the email search in terms of locating a single, responsive document.  Santiago Decl. (ECF No. 25-3) ¶¶ 20, 27.  That outcome confirms the adequacy of the keyword search terms.  In addition, utilizing terms derived from the FOIA request—as the agency did with the terms "procedure", "protocol", "guidance", and "policy"—is a reasonable method for crafting a keyword search.  *Watkins*, 78 F. 4th at 444.  As in *Watkins*, Plaintiffs fail to establish that the additional terms they raise for the first time in their opposition and cross-motion are "essential" to an adequate search of the Office of the Chief Immigration Judge.[2]  *Id.* at 445 ("What is more, the question before us 'is not whether there

---

[2]      As Plaintiffs contend that "cooperation and transparency among parties improves keyword searches' quality" (Opp'n at 16), and included emails of settlement communications between counsel as an exhibit to their filing, it bears noting that Plaintiffs failed to question the adequacy of the so-called "headquarters" email search when the parties had conferred on that issue prior to briefing. Pinto Decl. (26-3), Ex. A at ECF p. 6.  Although Plaintiffs' counsel stated in that communication that he did not consider the search terms "precise enough" for the search he

might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'") Accordingly, the Court should find that the Defendant utilized search methods reasonably calculated to locate responsive documents.

## CONCLUSION

For the above reasons, and those set forth in Defendant's motion, the Court should grant summary judgment in favor of Defendant and deny Plaintiffs' cross-motion.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ Jeremy S. Simon*
JEREMY S. SIMON, D.C. Bar # 447956
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*

---

proposed of the email of Assistant Chief Immigration Judges (a search that Defendant did not consider necessary for reasons already explained above), he also stated that "[t]o be clear, we're not seeking a new search by headquarters." *Id.*