## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL, *et al.*, | |
| Plaintiffs, | Civil Action No.: 23-1952 (RC) |
| v. | Re Document Nos.: 25, 26 |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | |
| Defendant. | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment

### I.  INTRODUCTION

Plaintiffs are nonprofit organizations that advocate for fair and just administration of United States immigration laws.  These organizations claim that immigration judges sometimes advance the date of immigration court hearings, and that this practice interferes with noncitizens' access to counsel during those proceedings.  Plaintiffs filed a Freedom of Information Act ("FOIA") request with the Executive Office of Immigration Review ("EOIR") for policy documents regarding advancement of hearings, motions to continue, and related issues.  After EOIR failed to respond, Plaintiffs filed this lawsuit.  The agency subsequently conducted manual and keyword searches of email accounts belonging to current and former Chief Immigration Judges.  EOIR also searched an intranet site location where policy documents are commonly stored.  Plaintiffs claim that EOIR construed the scope of its request too narrowly, and that its

search for responsive documents was inadequate.  EOIR asserts that it properly construed Plaintiffs' FOIA request and that its search was reasonable and adequate.  The Court concludes that EOIR properly understood the scope of Plaintiffs' FOIA request with respect to records sought within the Office of the Chief Immigration Judge ("OCIJ").  EOIR nonetheless misinterpreted the FOIA request to exclude records held by Assistant Chief Immigration Judges ("ACIJs"), and additional locations are likely to contain documents responsive to the request.  As such, the Court grants in part and denies in part each party's motion for summary judgment and directs the agency to conduct a supplemental search for responsive records.

## II.  FACTUAL BACKGROUND

Plaintiffs submitted a FOIA request to EOIR on October 28, 2022, seeking "records of guidelines, procedures, protocols, or policies relating to" five subcategories of procedures followed by immigration courts and judges, reaching back to January 1, 2017.  Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–2, ECF No. 25-2.[1]  Those subcategories included (1.a.) "[i]mmigration courts' process and criteria used to advance the date of individual merit hearings"; (1.b.) "[i]mmigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to" an attorney's "case-related scheduling conflict" or "workload or case-related conflicts that may prevent case preparation"; (1.c.) "[i]mmigration courts' process for notifying respondents, respondents' representatives, or both, that individual merit hearings have been advanced"; (1.d.) "[c]ourt personnel's process for selecting a new hearing date when an individual merit hearing is advanced"; and (1.e) "[t]he

---

[1] Item 2 of the FOIA request sought data indicating the number of cases advanced by immigration courts since January 1, 2020.  *See* SUMF ¶ 2.  As EOIR provided the data, that request is no longer at issue in this lawsuit.  *See* Pls.' Mem. in Supp. of Mot. Summ. J. and in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Mot.") at 4 n.3, ECF No. 26-1.

agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled 'Good Cause for a Continuance in Immigration Proceedings.'" *Id.* ¶ 2.

After EOIR failed to produce records in response to the FOIA request, Plaintiffs filed this lawsuit on July 6, 2023.  *See* Compl., ECF No. 1.  EOIR understood the FOIA request to seek "records that constitute officially issued and centrally disseminated guidelines, procedures, protocols, or policies pertaining to the listed subitems."  Santiago Decl. ¶ 15, ECF No. 25-3.  EOIR reasoned that responsive guidelines and policies would be disseminated by OCIJ, *id.* ¶ 18, and that then-Regional Deputy Chief Immigration Judge Sheila McNulty's email account "would be included on emails concerning guidelines, procedures, protocols or policies of the type requested in the FOIA request," *id.* ¶ 19.  Judge McNulty performed what EOIR describes as a "manual search of her email" that located two responsive records.  *Id.* ¶ 20.  EOIR also conducted a search for publicly available guideline and policy documents, identifying 11 responsive records.  *Id.* ¶ 21.  After this lawsuit was filed, EOIR conducted a supplemental search of email accounts belonging to Judge McNulty, who had since been appointed as Chief Immigration Judge, and her two predecessors reaching back to September 2016.  *Id.* ¶¶ 26–28.  These searches returned an aggregate of 323 items, *id.* ¶¶ 27, 29, "and the same emails that were previously identified from the manual search described in paragraph 20 above were the only records identified as responsive to the request."  *Id.* ¶ 29.  EOIR declined to search for records responsive to subpart 1.e. of the FOIA request—which sought policy and procedure documents implementing a proposed rule—because "it was determined that the notice of proposed rulemaking had not, as of the time of the search in response to the FOIA request, resulted in a final rulemaking."  *Id.* ¶ 22.

3

Following further filings in this case, EOIR conducted an additional search of its "intranet site for guidelines, procedures, protocols and policies" by surveying the Administration and Policy tab, "where policies related to immigration courts would be stored." Suppl. Santiago Decl. ¶ 6, ECF No. 29-2. This search identified a single link to EOIR's public-facing website, which included documents EOIR had already provided to Plaintiffs. *Id.*

EOIR filed a motion for summary judgment, arguing that its search was adequate, that it properly invoked FOIA Exemption 6 regarding certain employees' email addresses, and that it complied with FOIA's segregability requirement. *See generally* Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 25-1. Plaintiffs filed a cross-motion for summary judgment, asserting that EOIR improperly narrowed the scope of its FOIA request, that the agency did not search all repositories likely to contain responsive records, and that its searches were not reasonably calculated to uncover all responsive documents. *See generally* Pls.' Mem. in Supp. of Mot. Summ. J. and in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Mot."), ECF No. 26-1

### III. LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). It "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989). "The agency bears the burden of

establishing that a claimed exemption applies." *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'" *Hardy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Rsch. Grp. v. Food and Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

## IV.  ANALYSIS

The parties' cross-motions for summary judgment focus on EOIR's interpretation of the FOIA request and the depth of its search for responsive records. The Court first addresses Plaintiffs' claim that EOIR improperly construed its FOIA request, concluding that EOIR misinterpreted the scope of the request in part. The Court then considers whether EOIR's search for records was adequate and reached all repositories likely to contain responsive records, determining that EOIR adequately searched for records within OCIJ, but that it must search for responsive rules and policies held by ACIJs that govern specific individual immigration courts.

5

Because Plaintiffs do not dispute the application of Exemption 6 or that the agency satisfied its segregability obligations, the Court grants EOIR summary judgment on those issues.

### A. Scope of the Request

Plaintiffs contend that EOIR's search for solely "officially issued" and "centrally disseminated" guidance documents improperly narrowed their request. *See* Pls.' Mot. at 8. According to Plaintiffs, this limitation "excludes informal and unofficial records of guidelines, procedures, protocols, or policies that reasonably fall within the scope of Plaintiffs' request." *Id.* They additionally argue that the "'centrally disseminated' limitation excludes court- and judge-specific" records. *Id.* at 9. EOIR responds that it properly interpreted the text of Plaintiffs' FOIA request to seek centrally issued records, and not unofficial policies or case-specific documents. *See* Def.'s Reply in Supp. Def.'s Mot. Summ. J. and Opp'n to Pls.' Cross-Mot. ("Def.'s Reply") at 1–5, ECF No. 29. The Court determines that Plaintiffs requested only official records, but that EOIR improperly limited the scope of the request to records circulated by OCIJ.

A FOIA requester has an obligation to "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3). An agency, in turn, "is bound to read [a FOIA] request as drafted, not as agency officials . . . might wish it was drafted." *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 271 F. Supp. 3d 241, 255 (D.D.C. 2017) (cleaned up) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). "[A]n agency also has a duty to construe a FOIA request liberally." *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990)). "In determining the proper scope of a FOIA request, '[t]he linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested.'" *Conservation Force v. Ashe*, 979 F.

Supp. 2d 90, 100 (D.D.C. 2013) (quoting *McKinley v. Fed. Deposit Ins. Corp.*, 807 F. Supp. 2d 1, 5 (D.D.C. 2011)); *see also American Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) ("Agencies . . . need not expand their searches beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.'" (quoting *Landmark Legal Found. v. Env't Prot. Agency*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003))).

Plaintiffs requested "EOIR records of guidelines, procedures, protocols, or policies relating to" a series of immigration court practices, including advancement of merits hearing dates, adjudication of motions to continue, notification of parties, and selection of new hearing dates following advancement. SUMF ¶¶ 1–2. EOIR argues that Plaintiffs' targeting of guidelines, procedures, protocols, and policies reaches only "official" documents, as those forms of documents are official "by their nature." Def.'s Reply at 3. The Court agrees with this interpretation of the FOIA request. Plaintiffs contend that the text of their request is broader because it defines "records" to include a wide range of media. *See* Pls.' Reply in Supp. of Pls.' Mot. Summ. J. and Surreply in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Reply") at 5, ECF No. 31; Ex. A to Compl., ECF No. 1-1. But the scope of requested documents cannot be broadened by a generic footnote advising the agency that Plaintiffs sought the records in any available form. Plaintiffs additionally fail to broaden the scope by emphasizing the words "related to" in the request. *See id.* The request does not seek records relating to the guidelines or policies, but rather guidelines or polices related to certain topics. Plaintiffs thus sought the policy records themselves, not a broader scope of documents related to those records.

The Court does not agree, however, with EOIR's stance that Plaintiffs requested solely centrally disseminated records. EOIR explains that, in its view, "guidelines, procedures,

7

protocols and policies related to continuance or advancement of individual merit hearings . . . are promulgated by the Office's leadership within its Office of Chief Immigration Judge, not individual immigration courts and judges." Def.'s Reply at 2 (citing Santiago Decl. ¶¶ 15–16 and Suppl. Santiago Decl. ¶¶ 2–3, 9). Plaintiffs contend, however, that they seek localized policies, as well. *See* Pls.' Reply at 2. After all, Plaintiffs sought records of procedures and policies employed by immigration courts and immigration judges, not just policies issued by OCIJ. *See* SUMF ¶ 2. Plaintiffs also include examples of standing orders issued by individual immigration courts, some of which set policies for continuances, appearances, and filings. *See* Ex. C to Pinto Decl., ECF No. 26-3. Several provisions of the Code of Federal Regulations imply that individual immigration courts oversee scheduling of their own matters. While the EOIR Director and Chief Immigration Judge have the power to issue some operational instructions and policies regarding case management, *see* 8 C.F.R. § 1003.0(b); 8 C.F.R. § 1003.9(b), "[t]he Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings." 8 C.F.R. § 1003.18(a). An individual immigration court may also "establish local operating procedures" with the concurrence of a majority of the judges of that court and the Chief Immigration Judge's approval "in writing."[2]  8 C.F.R. § 1003.40. These provisions demonstrate that responsive records are likely to exist within individual immigration courts rather than within OCIJ alone. Thus, EOIR's decision to search within OCIJ alone improperly narrowed the scope of Plaintiffs' request.

---

[2] While this regulation contemplates written Chief Immigration Judge approval, the standing orders in the record contain signatures only from Assistant Chief Immigration Judges and individual immigration judges. *See* Ex. C to Pinto Decl. It thus appears that these orders may sometimes be approved by Assistant Chief Immigration Judges and would not necessarily appear in the Chief Immigration Judge's email account.

Finally, Plaintiffs contend that "Defendant has not offered sufficient foundation for determining that records responsive to Item 1.e do not exist." Pls.' Mot. at 13. This portion of the request sought "records of guidelines, procedures, protocols, or policies relating to . . . [t]he agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled 'Good Cause for a Continuance in Immigration Proceedings.'" SUMF ¶ 2. Plaintiffs point to an "operative policy for continuances" that directs immigration judges to the proposed rule. Pls.' Mot. at 12–13. Yet the policy document clarifies that "the proposed regulatory changes" in the notice of proposed rulemaking "are not in effect." Ex. J. to Pinto Decl. at 239.[3] Plaintiffs' request is itself difficult to parse, as it is not easy to understand how an agency might issue guidelines, procedures, protocols, or policies relating to implementation of a rule that has not yet been promulgated. Plaintiffs do not clearly describe the records they search for, other than to speculate that EOIR "may have implemented aspects of the proposed rule through other means." Pls.' Reply at 5. This vague language does not "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3). As such, it is not surprising that the agency struggled to "determine 'precisely what records (are) being requested,'" *Ashe*, 979 F. Supp. 2d at 100, and that it was unable to produce responsive documents.

For these reasons, the Court determines that EOIR properly construed Plaintiffs' FOIA request as to records held by OCIJ and complied with its obligations when it declined to search for records relating to implementation of a rule that has yet to come into effect. EOIR nonetheless should have expanded the scope of its search to reach records likely to be held by Assistant Chief Immigration Judges that govern individual immigration courts. These courts

---

[3] Because the exhibits attached to the Pinto Declaration form a single PDF, the Court refers to the page numbers generated by CM/ECF.

may establish their own local operating procedures that regulate the scheduling of cases, as Plaintiffs have demonstrated.

### B. Adequacy of EOIR's Search

Plaintiffs contend that EOIR's search for responsive records was inadequate because the agency did not search all repositories likely to contain responsive records and because its search methods were not likely to find all responsive documents. *See* Pls.' Mot. at 12–20. Plaintiffs assert, for instance, that EOIR should have searched email accounts belonging to ACIJs, as well as accessible shared drives. *See id.* at 14. They also argue that EOIR's description of Judge McNulty's manual search was insufficient, and that the agency's keyword search was unreasonable. *See id.* at 14–19. EOIR responds that its search methods were reasonable and tailored to Plaintiffs' request. *See* Def.'s Reply at 6–13. The Court determines that EOIR's search for records within OCIJ was adequate, but that the agency must search for responsive records within ACIJ accounts and shared drives, which are more likely to contain local immigration court orders responsive to Plaintiffs' FOIA request.

An agency responding to a FOIA request must conduct an adequate search; that is, a search "reasonably calculated to uncover all relevant documents." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (quoting *Morley*, 508 F.3d at 1114). The adequacy of a search is generally "determined not by the fruits of the search, but [rather] by the appropriateness of [the search's] methods." *Id.* (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); *see also Ryan v. FBI*, 174 F. Supp. 3d 486, 490–91 (D.D.C. 2016) ("'There is no requirement that an agency seek every record system,' rather a search may be reasonable if it includes all systems 'that are likely to turn up the information requested.'" (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))). In other words, at summary

judgment, the pertinent question is not "whether there might exist any other documents possibly responsive to the request," but rather "whether 'the *search* for [the requested] documents was adequate.'"  *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg*, 745 F.2d at 1485.  To demonstrate the adequacy of its search, "the agency may rely upon reasonably detailed, nonconclusory affidavits [or declarations] submitted in good faith." *Id.*  The affidavits or declarations should "explain the scope and method of [the agency's] search 'in reasonable detail.'" *Leopold v. CIA*, 177 F. Supp. 3d 479, 486 (D.D.C. 2016) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).  What is more, they should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.  Unless there is evidence to the contrary, "such affidavits or declarations are sufficient to show that an agency complied with FOIA." *Leopold*, 177 F. Supp. 3d at 486.  On the other hand, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see Leopold v. Dep't of Just.*, 130 F. Supp. 3d 32, 40 (D.D.C. 2015) ("Summary judgment based on affidavits is not warranted, however, if the affidavits are 'controverted by either contrary evidence in the record [or] by evidence of agency bad faith.'" (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))).

EOIR's methods to search for records within OCIJ were reasonably calculated to uncover guidance documents responsive to Plaintiffs' request.  Judge McNulty first performed a manual

11

search of her email account. Santiago Decl. ¶ 19. That account was likely to contain any extant records of guidelines, procedures, protocols, or policies relating to immigration court advancement of merits hearings, motions to continue, and processes for selecting a new hearing date because Judge McNulty would have been included on those communications when she served in various leadership positions reaching back to 2015. *See id.* ¶¶ 19–20. EOIR then conducted a keyword search of Judge McNulty's email, along with those of the two previous Chief Immigration Judges. *See id.* ¶¶ 25–29. This included eight pairings of words such as "Policy AND 'advance' AND 'merit hearings.'" *Id.* ¶ 27. This search identified the same records Judge McNulty discovered in her earlier manual search, which the agency found to "further confirm[] the adequacy of the search." *Id.* ¶ 29. EOIR then searched its intranet page for responsive records. Suppl. Santiago Decl. ¶ 6. These "original and supplemental search efforts, taken together, were reasonable." *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 444 (D.C. Cir. 2023). By their nature, the requested records detailing EOIR policies for immigration courts would be clearly identified and readily available in the agency's systems rather than buried in files. It is also unsurprising that the bulk of these documents would be publicly available. The limited nature of these records may reflect the significant discretion EOIR provides to immigration judges in the management of their own dockets. *See* 8 C.F.R. § 1003.18(a) ("The Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings."). For instance, EOIR policy and procedure memoranda assert that the agency "has no policy" and "does not possess authority" to require an immigration judge "to grant or deny a continuance request in specific cases." Ex. J to Pinto Decl. at 235.

Plaintiffs pick at potential shortcomings in some aspects of this search. They argue, for instance, that the declarant's description of the manual search Judge McNulty performed lacks sufficient detail. *See* Pls.' Mot. at 15. Were this the only search the agency performed, the Court would almost certainly agree. Yet the agency's subsequent searches and reasonably thorough descriptions of those searches, *see* Santiago Decl. ¶¶ 26–28; Suppl. Santiago Decl. ¶ 6, overcome any shortcomings in the breadth and presentation of the initial manual search. *See Hodge*, 703 F.3d at 580 ("[B]y the time a court considers the matter, it does not matter that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them."). Plaintiffs' objection to the keyword searches also fails to account for the entirety of the agency's search. *See* Pls.' Mot. at 16–19. Taken together with a manual search of the email account by its user, as well as a search of EOIR's posted office-wide policies, the agency's search of OCIJ for responsive documents was "reasonably calculated to uncover all relevant documents." *Hodge*, 703 F.3d at 579.

EOIR has not conducted an adequate search, however, for responsive records that may exist outside of OCIJ. The agency explains that it "has no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols or policies related to the subitems specified in the request that would deviate from any centrally issued guidelines, procedures, protocols or policies." Santiago Decl. ¶ 15; *see also* Suppl. Santiago Decl. ¶ 9 (stating that "EOIR has no reason to believe that ACIJs would be disseminating responsive guidelines . . . ."). The agency does not explain why this is so, particularly given that immigration courts may establish their own local operating procedures. *See* 8 C.F.R. § 1003.40. Plaintiffs additionally provide some local operating procedures that govern the scheduling of hearings and appear to be signed by ACIJs. *See, e.g.*, Ex. C to Pinto Decl. at 147, 150.

Plaintiffs' FOIA request also specifically targeted procedures used by "[i]mmigration courts" and "[i]mmigration judges" rather than EOIR-wide policies. SUMF ¶ 2. The Court is thus left with "substantial doubt as to the sufficiency of the search," which precludes summary judgment. *Truitt*, 897 F.2d at 542.

To render the search adequate, EOIR must conduct a search of "systems" outside OCIJ "that are likely to turn up the information requested," *Ryan*, 174 F. Supp. 3d at 490–91, including all ACIJ email accounts and shared drives where immigration courts would likely store standing orders, *see* Def.'s Resp. to Pls.' Local R. 7(h) Statement ¶ K, ECF No. 30-1 (not disputing that EOIR's systems contain shared drives); Ex. I to Pinto Decl. at 225 (discussing EOIR's use of shared drives). Plaintiffs have established that ACIJs often sign immigration courts' standing orders. *See generally* Ex. C to Pinto Decl. This search is also not "unreasonably burdensome" and would not require the agency to "boil[] the ocean in search of responsive records." *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1029 (D.C. Cir. 2024) (citing *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891–92 (D.C. Cir. 1995)). EOIR argues that seeking "records at a case-specific level" would be unreasonably burdensome, *see* Def.'s Reply at 3, yet it does not argue that this search of ACIJ accounts would represent an undue burden.[4] At the same time, Plaintiffs do not appear to ask the agency to search the hundreds of email accounts

---

[4] Although the agency does not discuss the issue in its briefing, its declarant explains that searching ACIJ accounts would require the agency to identify "who was in the position of ACIJ for each immigration court over a five-year time period," asserting "[t]hat number would certainly exceed thirty-eight." Suppl. Santiago Decl. ¶ 9. Even if EOIR had argued in its briefing that a search of ACIJ accounts would be too burdensome, the declarant's justification does not represent a "detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Prop. of the People, Inc. v. United States Dep't of Just.*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)); *see also People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding the agency's burden met when manual search of 44,000 files was estimated to take more than 25,000 hours to perform).

belonging to other immigration judges. *See* Pls.' Mot. at 13–14. A search of that breadth is likely unnecessary regardless, as ACIJs signed the standing orders Plaintiffs present to the Court, and these orders would therefore be present in ACIJ accounts and shared drives regardless. *See* Ex. C to Pinto Decl.[5]

## V.  CONCLUSION

For the foregoing reasons, EOIR's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. EOIR conducted an adequate search for records within OCIJ, properly applied Exemption 6 to relevant records, and satisfied its segregability requirements. EOIR must nonetheless conduct an additional search of record repositories outside OCIJ that may contain records responsive to items 1.a. through 1.d. of Plaintiffs' FOIA request. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 14, 2025                                              RUDOLPH CONTRERAS
                                                                        United States District Judge

---

[5] EOIR also argues that it would be unduly burdensome to require the agency to search individual immigration court dockets for responsive records. *See* Def.'s Mot. at 6. Plaintiffs clarify that they do not ask the agency to search dockets for immigration judges' actions in individual cases. *See* Pls.' Mot. at 10. The Court similarly interprets Plaintiffs' FOIA request to target broader policies and procedures rather than individual case files. *See* SUMF ¶ 2.